**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| REBECCA SAILSBERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| VILLAGE OF SAUK VILLAGE, an Illinois | ) | Judge |
| Municipality; MAYOR DAVID HANKS, | ) | |
| individually; J.W. FAIRMAN, individually and in | ) | Magistrate Judge |
| his official capacity as Public Safety Director; | ) | |
| FAIRMAN CONSULTANTS, LTD., an Illinois | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## *COMPLAINT AT LAW*

NOW COMES the Plaintiff, REBECCA SAILSBERY, by and through her attorney, WALSH LAW GROUP, P.C., and presents her Complaint at Law and in support thereof, complains as follows:

## *NATURE OF THE ACTION*

1.      This is an action under Title VII and Sections 1981 and 1983 of the United States Code to correct unlawful employment practices on the basis of retaliation and to provide appropriate relief to REBECCA SAILSBERY, who was subjected to retaliation, harassment, retaliatory demotion and denial of promotion by her employer, THE VILLAGE OF SAUK VILLAGE.

## *JURISDICTION AND VENUE*

2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331 and 1343.

3.      Venue is proper where the unlawful employment practices alleged below were committed, and all parties reside, in Cook County, Illinois, a county within the jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division.

4.      All conditions precedent to the institution of this lawsuit have been fulfilled, including receipt of a Right-to-Sue letter on October 14, 2015.  *See* Exhibit A.

### *THE PARTIES*

5.      At all relevant times, the VILLAGE OF SAUK VILLAGE ("Sauk Village") was, and is now, an Illinois municipal corporation and employer engaged in industry affecting commerce within the meaning of § 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

6.      At all relevant times, Plaintiff REBECCA SAILSBERY ("Sgt. Sailsbery or then-Deputy Chief Sailsbery") was, and is, a duly qualified peace officer employed by defendant Sauk Village.

7.      At all relevant times, Sauk Village was an employer with 100 or more employees for twenty weeks in the current and preceding calendar year for purposes of 42 U.S.C. § 1981(a)(3)(D).

8.      At all relevant times, Defendant MAYOR DAVID HANKS ("Mayor Hanks") was the mayor of Sauk Village and, along with other officials of Sauk Village, created and instituted the policies complained of herein.

9.      At all relevant times, Defendant J.W. FAIRMAN ("Mr. Fairman") was employed by Sauk Village as its "Village Administrator" and "Public Safety Director."

10.      At all relevant times, Defendant FAIRMAN CONSULTANTS, LTD. ("Fairman Consultants, Ltd.") was, and is, an Illinois Municipal Corporation owned and created by its

principal, Mr. Fairman. Fairman Consultants, Ltd. is the recipient of Mr. Fairman's salary and benefits according to his employment contract with Sauk Village.

### *STATEMENT OF FACTS*

11. Sgt. Sailsbery has been a police officer of various ranks with Sauk Village for twenty-three years. She has always performed her duties beyond her employer's expectations.

12. In 2009 and 2010, she was subjected to racial discrimination, harassment and retaliation after the election of Mayor Lewis Towers, including being demoted from deputy chief to sergeant. In 2010 she, along with two other employees in the police department, filed EEOC charges and a federal lawsuit. Those lawsuits were settled in 2011.

13. In 2012, Sgt. Sailsbery filed a subsequent EEOC charge against Sauk Village relative to former Chief of Police Robert Fox's refusal to promote her to the rank of deputy chief. Chief Fox was eventually terminated after being accused of gross misconduct and the mayor that appointed him, Lewis Towers, resigned in disgrace. That charge resulted in a second federal lawsuit.

14. After Mayor Towers resigned in November 2012, then-Trustee Hanks was appointed mayor. Mayor Hanks expected that any village employee with a pending lawsuit would dismiss it after he was appointed. When employees did not dismiss their lawsuits, including Sgt. Sailsbery, Mayor Hanks set out on a course to retaliate against them.

15. In 2010, a vacancy was created at the rank of deputy chief on the Sauk Village Police Department ("SVPD") and that vacancy existed through 2012. Sgt. Sailsbery was the highest ranking and longest-serving officer on the SVPD at that time, other Officer Davitt and former Chief of Police Timothy Holevis. Sgt. Sailsbery qualified for the promotion and submitted her resume in accordance with the notice of vacancy.

16.     Mayor Hanks would not allow former Chief Holevis to appoint a deputy chief of his choosing because he had filed a prior complaint of discrimination and harassment and Mayor Hanks knew Sgt. Sailsbery would have been Chief Holevis' first choice.  Mayor Hanks does not believe that women should be in leadership positions.

17.     Instead, in an attempt to circumvent Sgt. Sailsbery's promotion to deputy chief, on November 6, 2013 Sauk Village hired REM Management Services, a well-regarded management consulting firm, to rank the candidates for deputy chief.

18.     On November 13, 2013, Sgt. Sailsbery filed her second federal lawsuit relative to Mayor Towers and former-Chief Robert Fox's refusal to promote her to deputy chief.  On December 4, 2013, Sgt. Sailsbery was notified that REM Management Services had ranked her most qualified on the list of candidates for appointment to deputy chief.

19.     Mayor Hanks ignored REM Management Services' findings and by February 2014 still refused to promote Sgt. Sailsbery to deputy chief.  Mayor Hanks refused to appoint Sgt. Sailsbery due to her gender and in retaliation for filing prior claims of discrimination against Sauk Village.

20.     On February 11, 2014, Sgt. Sailsbery submitted a letter to Mayor Hanks complaining of retaliation for refusing to promote her to deputy chief.  According to a witness, Mayor Hanks became irate when he read the letter.  Mayor Hanks did not respond to the complaint, conduct an investigation, or commission anyone else to investigate her complaint.

21.     On February 19, 2014 and in retaliation for Sgt. Sailsbery's February 11, 2014 complaint, Mayor Hanks tendered a memo to the Chief Holevis asking him to "restructure" the police department.  The proposed "restructure" was nothing more than an excuse for Mayor Hanks to avoid promoting Sgt. Sailsbery to deputy chief.

22.     In September 2014, Sgt. Sailsbery was promoted to deputy chief pursuant to settlement of her federal lawsuit against Sauk Village, but this did not serve to diminish Mayor Hanks' retaliatory animus against Sgt. Sailsbery.

23.     In early March 2015, Mayor Hanks notified the Sauk Village Board of Trustees ("the Board") that he wanted to create a new position, "Public Safety Director." Mayor Hanks did not post a notice for the position, allow then-Deputy Chief Sailsbery to apply for the position, accept resumes or allow her or others to interview.

24.     The Board voted in favor of creating the position. According to its job description, the Public Safety Director oversees the police and fire departments and reports to the mayor. The job description also states that the individual holding the position shall assume the position of chief of police if it becomes vacant.

25.     On March 21, 2015, Mayor Hanks appointed and the Board approved Mr. Fairman as Public Safety Director even though he was not qualified for the position because he was not a certified police officer and thus could not legally assume the position of chief of police.

26.     Within seconds of the Board approving Mr. Fairman's appointment, Chief Tim Holevis tendered his notice of retirement. Mr. Fairman could not assume the duties of chief of police because he was not certified as a police officer. Instead, then-Deputy Chief Sailsbery was ordered to assume the responsibilities of chief of police, but was denied the actual appointment to Acting/Interim Chief of Police and corresponding salary increase.

27.     The SVPD general orders required that then-Deputy Chief Sailsbery at least be appointed "Acting/Interim Chief of Police," but Mayor Hanks refused to do so due to then-Deputy Chief Sailsbery's gender and in retaliation for her having made complaints of

discrimination. Prior to March 21, 2015, it had always been the custom and practice of Sauk Village to promote a supervisor to Acting Chief of Police in the absence of the chief of police.

28. On March 25, 2015, Mayor Hanks told then-Deputy Chief Sailsbery that she "will not be promoted to chief, or demoted." In other words, then-Deputy Chief Sailsbery was told she shouldn't bother applying to be chief of police. On March 26, 2015, she submitted another complaint of discrimination and retaliation to Sauk Village for its refusal to promote her to Acting/Interim Chief.

29. Shortly after receiving then-Deputy Chief Sailsbery's March 26, 2015 complaint, Mayor Hanks had a conversation with Trustees Linda Washington and Ed Meyers wherein the consensus was that then-Deputy Chief Sailsbery should not be permitted to hold a job in Sauk Village because she made complaints and filed prior lawsuits.

30. On April 1, 2015, Village Treasurer Mohan Rao informed then-Deputy Chief Sailsbery that the Department of Justice was accepting applications for the 2015 DOJ Bullet-Proof Vest Grant. Shortly thereafter, then-Deputy Chief Sailsbery reached out to the Illinois Public Risk Fund to inquire about other grants and was notified that Sauk Village had received numerous bullet proof grants over the past several years.

31. On April 6, 2015, then-Deputy Chief Sailsbery had a meeting with Mayor Hanks and Mr. Rao about the request to apply for another bullet proof vest grant because she was unaware of Sauk Village using grant money to actually purchase any vests. At this meeting, Mr. Rao told then-Deputy Chief Sailsbery to change the expiration dates on the existing vests, which she refused to do.

32. On or near April 6, 2015, a village attorney from Odelson & Sterk served a memo on then-Deputy Chief Sailsbery affirming she would remain deputy chief, but would not be

promoted to chief even though the application process for the vacant chief's position had not yet begun.

33.     On April 10, 2015, Mayor Hanks violated the SVPD chain of command and usurped then-Deputy Chief Sailsbery's authority by telling police officers they were free to ignore the usual chain of command and submit any complaints they may have directly to him. This was an attempt to seek out incriminating information about then-Deputy Chief Sailsbery.

34.     On April 17, 2015, Mayor Hanks posted a memo advising the members of the SVPD that they all would remain in their current positions, but then-Deputy Chief Sailsbery would remain deputy chief only "until further notice."

35.     On April 13, 2015, Mayor Hanks told a group of citizens that he intended to hire a new chief of police from outside the department and eliminate the rank of deputy chief, which would cause then-Deputy Chief Sailsbery to be demoted to the rank of sergeant.  Mayor Hanks planned to eliminate the rank of deputy chief due to then-Deputy Chief Sailsbery's gender and because she filed complaints of discrimination and retaliation.

36.     On April 26, 2015, Mayor Hanks and Mr. Fairman surreptitiously retained a private investigations firm to investigate then-Deputy Chief Sailsbery's conduct at the police department, without notifying her.  The Uniform Peace Officers' Disciplinary Act required that Sauk Village provide such notification.

37.     The investigation was commissioned in retaliation for then-Deputy Chief Sailsbery having filed prior complaints of discrimination and retaliation and to facilitate her demotion.  Then-Deputy Chief Sailsbery has not violated any Sauk Village rule or policy at any time.

38.    On April 29, 2015, then-Deputy Chief Sailsbery filed an EEOC Charge relative to the incidents described alleged above.  On May 4, 2015, Mr. Fairman and Mayor Hanks offered to promote Sergeant Jack Evans to chief of police even though Sgt. Evans had much less experience and training than then-Deputy Chief Sailsbery.  Sgt. Evans recognized what was happening and refused the promotion.

39.    In or near early May, Mr. Fairman and Village Clerk Debbie Williams attempted to enter the secure administrative offices of the police station at a time juvenile victims were present.  Then-Deputy Chief Sailsbery informed them that they could not legally enter the building because there were juvenile victims present and only certified police officers were permitted to enter.

40.    When Mr. Fairman was informed of this, he responded by physically pushing past then-Deputy Chief Sailsbery and forcing his way into the administrative side of the building.  Ms. Williams followed Sgt. Sailsbery's mandate and remained outside.

41.    On May 18, 2015, then-Deputy Chief Sailsbery filed another complaint of retaliation and discrimination with Sauk Village relative to the offer of promotion to Sgt. Evans.  The Village never investigated that complaint.

42.    On May 4, 2015, Mr. Fairman met with Trustee Derrick Burgess and fabricated several stories about then-Deputy Chief Sailsbery's work performance in an effort to cause a lack of confidence in her abilities.  As an example, Mr. Fairman claimed that then-Deputy Chief Sailsbery fired all of the police department's part-time dispatchers and was collecting more than her allotted salary.  Neither allegation was true.

43.     Mr. Fairman fabricated these stories in furtherance of Mayor Hanks' agenda to retaliate against then-Deputy Chief Sailsbery for filing complaints of discrimination and/or harassment.

44.     On or about May 21, 2015, then-Deputy Chief Sailsbery filed a supplemental complaint of discrimination and retaliation with Sauk Village. Sauk Village retained the firm of Odelson & Sterk to "investigate" her complaint even though Odelson & Sterk was representing Sauk Village against then-Deputy Chief Sailsbery relative to her EEOC Charge of April 29, 2015.

45.     The next day, then-Deputy Chief Sailsbery received correspondence from Odelson & Sterk that her complaint was "unfounded," even though they did nothing to investigate the complaint.

46.     On May 22, 2015 then-Deputy Chief Sailsbery received another correspondence from Odelson & Sterk claiming they would investigate her complaint only if she provided them with a memorandum detailing who, where, when, why, and how she received the information detailed in her complaint. She was also asked to answer why this information was reported to her and why she felt the act complained of was discriminatory. Then-Deputy Chief Sailsbery provided the requested information so an investigation would be conducted.

47.     On June 3, 2015, Odelson & Sterk confirmed it had received the requested information and would conduct interviews and investigate her complaint. To this date, no interviews or investigation have been conducted.

48.     On June 8, 2015, then-Deputy Chief Sailsbery informed Odelson & Sterk of her concerns that there was an inherent conflict of interest with Odelson & Sterk allegedly investigating her complaints and simultaneously representing the Sauk Village against her at the

EEOC relative to the same subject matter. Neither Odelson & Sterk nor Sauk Village ever responded.

49.     Prior to August 4, 2015, then-Deputy Chief Sailsbery was contacted by Rachel Eastman, who was a board member of Sauk Village's Neighborhood Watch Committee. She told then-Deputy Chief Sailsbery that she was present for meetings where Mayor Hanks said "Deputy Chief Sailsbery will get hers next" in reference to former-Chief Holevis being forced out of the SVPD and Mr. Fairman attempted to have Ms. Eastman falsify a story about then-Deputy Chief Sailsbery.

50.     Ms. Eastman also confirmed that Trustee Meyers told her that Mr. Fairman was going to "put a lot on Becky's plate," give Deputy Chief Sailsbery things she hadn't experienced, could not handle, and "make her fail." Trustee Meyers said Sauk Village would then fire her when she couldn't cope. Trustee Meyers said Deputy Chief Sailsbery "should be gone in a couple of weeks."

51.     On August 4, 2015 then-Deputy Chief Sailsbery tendered another complaint of retaliation along with an affidavit from Ms. Eastman detailing the aforementioned statements to Mayor Hanks and other Sauk Village officials.

52.     On August 5, 2015, within twenty-four hours of tendering the complaint, then-Deputy Chief Sailsbery received more than seventeen emails from Mr. Fairman ordering difficult job assignments with impossible deadlines, including several simultaneous assignments requesting years of various documents, data, and investigations to be completed in less than two hours.

53.     On August 6, 2015 then-Deputy Chief Sailsbery tendered another complaint about the retaliatory and hostile work environment being created by Mayor Hanks and Mr. Fairman.

On August 7, 2015, Mayor Hanks advised then-Deputy Chief Sailsbery that he conducted an investigation into her complaint against himself and Mr. Fairman and considered the complaints to be unfounded.

54.     Deputy Chief Sailsbery was then ordered to attend a meeting in Mayor Hanks' office on August 11, 2015.  During this meeting, Mayor Hanks reiterated that he found her complaints to be unfounded.  Deputy Chief Sailsbery expressed concern that Mayor Hanks was conducting the investigation when he was the subject of the complaint.  Mayor Hanks refused to respond.

55.     August 21, 2015, then-Deputy Chief Sailsbery was interviewed at the police department by an F.B.I. Agent and Illinois State Trooper.  The interview was precipitated by false allegations made by Mr. Fairman related to two civil rights cases.

56.     Mr. Fairman never asked then-Deputy Chief Sailsbery about the facts of one of the cases before filing the false complaint with the F.B.I. and State Police.  Mr. Fairman levied the false allegations in furtherance of Mayor Hanks' scheme to retaliate against then-Deputy Chief Sailsbery.

57.     On August 25, 2015, Mayor Hanks appointed a new chief of police from outside the department who was less qualified than then-Deputy Chief Sailsbery, even though this new chief was not available to begin working until September 14, 2015.  Then-Deputy Chief Sailsbery was denied the promotion to chief of police due to her gender and in retaliation for having filed complaints of retaliation and harassment.

58.     Mayor Hanks claimed that the new chief of police was chosen based on the findings of a three-member committee assembled to find a new chief.  However, at the village board meeting of August 25, 2015, Trustee and committee member Cecial Tates made a public

statement that the chief's committee was a "joke" and a "sham" and publicly apologized to then-Deputy Chief Sailsbery for the way she had been treated relative to the chief's position.

59.     Trustee Tates admitted the committee never met collectively, was not permitted to make copies of any documents to review, and was not made privy to the decision of the other committee members.  He also stated that he never saw any application or background information for the individual ultimately appointed by Mayor Hanks.

60.     Trustee Tates ultimately recommended that then-Deputy Chief Sailsbery be appointed chief of police.  He also acknowledged that it was Mayor Hanks, not the committee that made the decision of who would be appointed chief of police.

61.     Also at the village board meeting of August 25, 2015, second committee member and trustee Rosie Williams announced that the process for hiring a new chief was "flawed and not conducted appropriately."

62.     On August 27, 2015, Mayor Hanks and Mr. Fairman demoted then-Deputy Chief Sailsbery to sergeant without cause and in another act of retaliation.  As a result, the SVPD had no active chief of police or deputy chief of police.

63.     The failure to have an active chief or deputy chief constituted a violation of the rules of the Illinois Training and Standards Board and the SVPD's General Orders, Policies and Procedures and left the police department without any administrative staff.

64.     On or near September 1, 2015, Mr. Fairman ordered Sgt. Sailsbery to continue performing all the administrative duties of the deputy chief of police and the chief of police until the new chief was ready to report for duty.

65.     On September 3, 2015, Mr. Fairman demoted Sgt. Sailsbery a second time from detective sergeant to patrol sergeant in front of other employees.  He then ordered her out to the street immediately even though she did not have patrol equipment.

66.     Sgt. Sailsbery informed Mr. Fairman that she did not have patrol equipment, such as a gun belt, dual handcuff case, retention holster, radio holster, asp baton, taser carrier, puncture resistant gloves or pepper spray, but he refused to listen to her concerns for her personal safety and said "this is not up for discussion."  Sgt. Sailsbery was clearly being put in harm's way.

67.     The demotion caused Sgt. Sailsbery to lose a $1,200.00 stipend and her take-home car.  In fact, Mr. Fairman took away the take-home car without warning on September 3, which caused Sgt. Sailsbery to be stranded at work with no way home.  All of this was done in furtherance of Mayor Hanks' scheme to retaliate against Sgt. Sailsbery.

68.     Since her demotion to sergeant, Mayor Hanks has made a point of repeatedly and publicly attacking and defaming Sgt. Sailsbery at his "Breakfast with the Mayor" meetings. Most recently, on November 14, 2015, Mayor Hanks claimed Sgt. Sailsbery was "hurting and destroying our community."

69.     Sauk Village has also refused to reimburse Sgt. Sailsbery's education expenses since 2013 in the amount of $5,278.00 in retaliation for complaining of discrimination and retaliation.

### COUNT I – VIOLATION OF TITLE VII – FAILURE TO PROMOTE – RETALIATION

70.     Sgt. Sailsbery repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

71. Since December 4, 2013 and continuing through at November 23, 2015, Sauk Village engaged in unlawful employment practices in violation of § 703(a) of Title VII**,** 42 U.S.C. § 2000e-2.

72. Sauk Village discriminated against Sgt. Sailsbery with respect to the terms and conditions of her employment when it refused to promote her to chief of police in retaliation for engaging in protected activities in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991.

73. Sauk Village's employment practices and conduct were intentional, deliberate, willful, and conducted in callous disregard of Sgt. Sailsbery's rights.

74. Sauk Village's policies and practices have produced, *inter alia*, disparate treatment against Sgt. Sailsbery with respect to the terms and conditions of her employment.

75. By reason of Sauk Village's discriminatory practices, Sgt. Sailsbery is entitled to all legal and equitable remedies available under Section 2000e *et seq.,* as amended by the Civil Rights Act of 1991.

76. The effect of the practices complained of above has been to deprive Sgt. Sailsbery of equal employment opportunities, promotion, and otherwise adversely affect her status as an employee because of engaging in protected activities.

77. Sauk Village at all relevant times acted with malice or reckless indifference to the federally protected rights of Sgt. Sailsbery in violation of § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

78. As a result of the aforementioned intentionally discriminatory acts of Sauk Village, Sgt. Sailsbery has suffered and will likely continue to suffer grievous harm including,

14

without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against the VILLAGE OF SAUK VILLAGE in an amount in excess of $300,000.00, and for all legal and equitable relief available pursuant to Title VII of the Civil Rights Act and the Civil Rights Act of 1991 plus attorneys' fees, litigation expenses and cost of suit.

### *COUNT II – VIOLATION OF TITLE VII – FAILURE TO PROMOTE – GENDER*

79.     Sgt. Sailsbery repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

80.     Since December 4, 2013 and continuing through at November 23, 2015, Sauk Village engaged in unlawful employment practices in violation of § 703(a) of Title VII**,** 42 U.S.C. § 2000e-2.

81.     Sauk Village discriminated against Sgt. Sailsbery with respect to the terms and conditions of her employment when it refused to promote her to chief of police due to her gender, female, in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991.

82.     Sauk Village's employment practices and conduct were intentional, deliberate, willful, and conducted in callous disregard of Sgt. Sailsbery's rights.

83.     Sauk Village's policies and practices have produced, *inter alia*, disparate treatment against Sgt. Sailsbery with respect to the terms and conditions of her employment.

84.     By reason of Sauk Village's discriminatory practices, Sgt. Sailsbery is entitled to all legal and equitable remedies available under Section 2000e *et seq.,* as amended by the Civil Rights Act of 1991.

85. The effect of the practices complained of above has been to deprive Sgt. Sailsbery of equal employment opportunities, promotion, and otherwise adversely affect her status as an employee because of engaging in protected activities.

86. Sauk Village at all relevant times acted with malice or reckless indifference to the federally protected rights of Sgt. Sailsbery in violation of § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

87. As a result of the aforementioned intentionally discriminatory acts of Sauk Village, Sgt. Sailsbery has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against the VILLAGE OF SAUK VILLAGE in an amount in excess of $300,000.00, and for all legal and equitable relief available pursuant to Title VII of the Civil Rights Act and the Civil Rights Act of 1991 plus attorneys' fees, litigation expenses and cost of suit.

## *COUNT III – RETALIATION IN VIOLATION OF TITLE VII – DEMOTION*

88. Sgt. Sailsbery repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

89. Sgt. Sailsbery participated in a protected activity when she filed a complaints with the EEOC, a federal lawsuit and complaints to the mayor and village trustees alleging discrimination, harassment and/or retaliation.

90. Mayor Hanks and Mr. Fairman were "final policymakers" within Sauk Village and both were Sgt. Sailsbery's "supervisors" as defined in Title VII.

91.    Mayor Hanks and Mr. Fairman were aware that Sgt. Sailsbery had engaged in protected activities as both were named in her numerous complaints of harassment and retaliation.

92.    Mayor Hanks and Mr. Fairman demoted Sgt. Sailsbery from deputy chief to detective sergeant and again from detective sergeant to patrol sergeant in retaliation for having filed a prior EEOC Charge, federal lawsuit and complaints to Sauk Village administrators.

93.    As a result of the retaliatory demotions by Mayor Hanks and Mr. Fairman as alleged in the preceding paragraphs, Sgt. Sailsbery suffered, and will likely continue to suffer, grievous harm including, without limitation, substantial loss of income, loss of earnings potential, loss of enjoyment of life and severe emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against the VILLAGE OF SAUK VILLAGE in an amount in excess of $300,000.00, and for all legal and equitable relief available pursuant to Title VII of the Civil Rights Act and the Civil Rights Act of 1991 plus attorneys' fees, litigation expenses and cost of suit.

### *COUNT IV – RETALIATION IN VIOLATION OF TITLE VII –*<br>*HOSTILE WORK ENVIRONMENT*

94.    Sgt. Sailsbery repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

95.    Since December 2013 and continuing through at November 23, 2015, Sauk Village engaged in unlawful employment practices in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2.

96.    Sauk Village's retaliation and harassment of Sgt. Sailsbery was sufficiently severe and pervasive to alter the terms and conditions of her employment and create a hostile working

environment in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991.

97.     Sauk Village's employment practices and conduct were intentional, deliberate, willful, and conducted in callous disregard of Sgt. Sailsbery's rights.

98.     By reason of Sauk Village's discriminatory practices, Sgt. Sailsbery is entitled to all legal and equitable remedies available under Section 2000e *et seq.,* as amended by the Civil Rights Act of 1991.

99.     The effect of the practices complained of above has been to deprive Sgt. Sailsbery of equal employment opportunities, promotion, and otherwise adversely affect her status as an employee because of engaging in protected activities.

100.     Sauk Village at all relevant times acted with malice or reckless indifference to the federally protected rights of Sgt. Sailsbery in violation of § 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

101.     As a result of the aforementioned intentionally discriminatory acts of Sauk Village, Sgt. Sailsbery has suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against the VILLAGE OF SAUK VILLAGE in an amount in excess of $300,000.00, and for all legal and equitable relief available pursuant to Title VII of the Civil Rights Act and the Civil Rights Act of 1991 plus attorneys' fees, litigation expenses and cost of suit.

## *COUNT V – 42 U.S.C. § 1983 – DISCRIMINATION*

102.     Sgt. Sailsbery repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

103.     Mayor Hanks violated Sgt. Sailsbery's federally protected right to be free of unlawful discrimination and retaliation under the Fourteenth Amendment to the United States Constitution and Title VII of the Civil Rights Act.

104.     Mayor Hanks acted under color of law while violating Sgt. Sailsbery's federally protected rights.

105.     As a result Mayor Hanks' aforementioned intentionally discriminatory acts, Sgt. Sailsbery suffered, and will likely continue to suffer, grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against MAYOR DAVID HANKS individually in an amount in excess of $500,000.00 and for all legal and equitable relief available pursuant to § 1983 including punitive damages, attorneys' fees, litigation expenses and cost of suit.

## *COUNT VI – 42 U.S.C. § 1983 – DISCRIMINATION*

106.     Sgt. Sailsbery repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

107.     Mr. Fairman violated Sgt. Sailsbery's federally protected right to be free of unlawful discrimination and retaliation under the Fourteenth Amendment to the United States Constitution and Title VII of the Civil Rights Act.

108.     Mr. Fairman acted under color of law while violating Sgt. Sailsbery's federally protected rights.

109.     As a result Mr. Fairman's aforementioned intentionally discriminatory acts, Sgt. Sailsbery suffered, and will likely continue to suffer, grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against J.W. FAIRMAN individually and in his official capacity as Public Safety Director in an amount in excess of $500,000.00 and for all legal and equitable relief available pursuant to § 1983 including punitive damages, attorneys' fees, litigation expenses and cost of suit.

### *COUNT VII – 42 U.S.C. § 1983 – DISCRIMINATION*

110.     Sgt. Sailsbery repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

111.     Fairman Consultants, Ltd., through its principal Mr. Fairman, violated Sgt. Sailsbery's federally protected right to be free of unlawful discrimination and retaliation under the Fourteenth Amendment to the United States Constitution and Title VII of the Civil Rights Act.

112.     Fairman Consultants, Ltd., through its principal Mr. Fairman, acted under color of law while violating Sgt. Sailsbery's federally protected rights.

113.     As a result of Fairman Consultants, Ltd.'s aforementioned intentionally discriminatory acts, Sgt. Sailsbery suffered, and will likely continue to suffer, grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against FAIRMAN CONSULTANTS, LTD. in an amount in excess of $500,000.00 and for all legal and equitable relief available pursuant to § 1983 including punitive damages, attorneys' fees, litigation expenses and cost of suit.

### *COUNT VIII – MONELL CLAIM*

114.    Sgt. Sailsbery repeats, re-allege and incorporate by reference the factual allegations of paragraphs one through sixty-nine as if fully set forth herein.

115.    The harassment, retaliation, and refusal to promote were carried out by final policymakers of Sauk Village including Mayor Hanks and Mr. Fairman, each of whom had final policymaking authority to carry out the acts complained of in the preceding paragraphs.

116.    The harassment, retaliation, and refusal to promote Sgt. Sailsbery was part of a custom, policy and practice espoused by Sauk Village to retaliate against employees that exercised their right to engage in protected activities under Title VII of the Civil Rights Act.

117.    As a result of employing the aforementioned custom, policy and practice, Sgt. Sailsbery suffered and will likely continue to suffer grievous harm including, without limitation, substantial loss of income and benefits, loss of earnings potential, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, REBECCA SAILSBERY demands judgment against the VILLAGE OF SAUK VILLAGE in an amount in excess of $500,000.00 and for all legal and equitable relief available pursuant to § 1983 including attorneys' fees, litigation expenses and cost of suit.

### *JURY DEMAND*

118.    Sgt. Sailsbery demands trial by jury pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981 a (c) (1).

Respectfully submitted,

WALSH LAW GROUP, P.C.


By: ____/s/ Patrick J. Walsh____
            Patrick J. Walsh, Esq.

Patrick J. Walsh, Esq.
WALSH LAW GROUP, P.C.
30 South Wacker Drive, Suite 2200
Chicago, Illinois 60606
(312) 466-7683
ARDC No. 6287629
pw@thewalshlawgroup.com