# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA SAILSBERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 10564 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| VILLAGE OF SAUK VILLAGE, an Illinois | ) | |
| Municipality; MAYOR DAVID HANKS, | ) | |
| Individually; J.W. FAIRMAN, individually | ) | |
| and in his official capacity as Public Safety | ) | |
| Director; FAIRMAN CONSULTANTS, LTD. | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Passed over for chief of police and later demoted, Plaintiff Rebecca Sailsbery, a police

sergeant for the Village of Sauk Village (the "Village"), sues Defendants the Village, Village

Mayor David Hanks, Village Public Safety Director, J.W. Fairman, and Fairman's consulting

company, Fairman Consultants, Ltd. ("Fairman Consultants"), alleging discrimination and

retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*,

and 42 U.S.C. §§ 1981 and 1983.  Sailsbery moves to disqualify Fairman's attorney in this

lawsuit, Michael McGrath, and his law firm, Odelson & Sterk (the "Firm"), contending that  (1)

she has an attorney-client relationship with McGrath and the Firm creating a conflict with their

representation of Fairman here, which she will not waive; (2) McGrath has a conflict as an

attorney-witness in this lawsuit; and (3) although not pertinent to Sailsbery herself, the Firm's

representation of Fairman in this lawsuit conflicts with its current representation of the Village in

other matters based on Sailsbery's punitive damages claim.  The Court denies Sailsbery's motion

to disqualify [9] because Sailsbery has not established that McGrath and the Firm currently

represent or formerly represented her on a substantially related matter. Further, at this stage, it is speculative and premature to disqualify McGrath and the Firm either because Sailsbery believes McGrath may be a witness at trial or because the Firm represents Fairman here and represents the Village in other matters.

## BACKGROUND

On November 23, 2015, Sailsbery, a current Village police sergeant and formerly the deputy chief of police (and also, she claims, *de facto* chief of police), sued Defendants for discrimination, retaliation, and failure to promote. Sailsbery alleges that the Village failed to promote her to chief of police because of her gender and also retaliated against her in multiple promotion and demotion decisions due to other complaints and lawsuits she brought against the Village and Village officials, including an Equal Employment Opportunity Commission ("EEOC") charge relating to the events at issue here. According to the Complaint, after Sailsbery filed an EEOC charge against the Village on April 29, 2015, the Village began investigating her claims while Fairman and Hanks sought to terminate her, including by overworking her and filing false complaints against her. Although not fired, she was demoted to sergeant and then detective sergeant.

After Sailsbery initiated suit, McGrath and the Firm[1] filed an appearance on behalf of Fairman, and Sailsbery brought the present motion to disqualify. In her motion, Sailsbery establishes, and Fairman does not contest, that the Firm has current attorney-client relationships with Fairman here, the Village in other matters, and a prior attorney-client relationship with Hanks, which still may be ongoing, although the Del Galdo Law Group represents the Village and Hanks in this lawsuit. The Firm has been the "village attorney" since 2011, with McGrath

---

[1]     Two other Firm attorneys, Richard F. Bruen, Jr. and Lesley Quade Kennedy, also have filed appearances on behalf of Fairman.

working on numerous matters for the Village. Doc. 9 at 2. While Sailsbery claims that McGrath and the Firm also represent Fairman Consultants, McGrath has only filed an appearance for Fairman and Fairman Consultants is currently unrepresented in this lawsuit.[2]

At the heart of Sailsbery's motion, she claims that the Firm and McGrath have also represented her in several matters:

### 1) Robert Smith's EEOC Charge

Sailsbery states that in 2012, the Firm represented her individually in an EEOC investigation of Village police officer Robert Smith's charge of discrimination. Smith filed a charge against the Village alleging that Sailsbery and the former chief of police discriminated against him. Sailsbery claims that the EEOC charge was directed at her, not the Village, and states she was "represented and advised to meet with" a Firm attorney "to discuss case strategy and provide responsive documentation." Doc. 9 at 2. During the Village's investigation of and response to the charge, Sailsbery provided information to the Firm so that it could draft the Village's position statement, and she and other Village officials received emails from Firm attorneys, including emails attaching confidential drafts of the Village's position statement, with subject lines stating the emails were confidential and privileged. The emails also specifically noted Sailsbery's assistance with the Village's response and informed her that the charge was resolved. Sailsbery contends that her actions underlying the charge and her involvement in the response to the charge will "presumably" be at issue in this lawsuit. Doc. 9 at 2.

### 2) The Taser and Civil Rights FOIA Requests

Sailsbery maintains that the Firm continues to represent her personally in the Village's response to two Freedom of Information Act ("FOIA") requests related to third-party claims against the Village. After a Village police officer used a taser on a juvenile, the boy's attorney

---

[2]     Sailsbery also claims that Fairman Consultants is the alter ego of Fairman.

sent a FOIA request to the Village in September 2014. Sailsbery says the Firm represented her in "preparing a strategy and responding to" the FOIA request. Doc. 9 at 3. Similarly, in August 2015, after a woman received medical treatment following a self-inflicted injury, the woman sent a FOIA request to the Village in preparation for a civil rights lawsuit. The Firm sent an attorney to meet with Sailsbery to "discuss" and "prepare" a response to the second FOIA request. *Id.* at 3–4. Sailsbery says the Firm still represents her personally with regard to both FOIA requests and contends that the FOIA requests are relevant to this case because Fairman implicated her as being responsible for the underlying incidents.

### 3)    Legal Advice on Fairman's Orders

Sailsbery also relates that while she was deputy chief of police, Fairman gave her burdensome orders and work in the hopes of overwhelming her and subjecting her to discipline. Sailsbery represents that she "sought and received legal advice from Attorney McGrath" to determine whether she was required to follow Fairman's orders. *Id.* She contends that McGrath's legal advice will be at issue in this case because Fairman's orders were retaliatory.

### 4)    The *O'Sullivan* Lawsuit

Finally, in a 2013 lawsuit filed in the Circuit Court of Cook County against the Village, Sailsbery in her individual and official capacities, and other Village officials and trustees, captioned *O'Sullivan v. Village of Sauk Village et. al.*, No. 13 L 012111 (the "*O'Sullivan* Lawsuit"), the Firm had an appearance on file for Sailsbery and the acting Village chief of police, Timothy Holevis, until it was replaced by Johnson & Bell on December 9, 2013. At the same time that Johnson & Bell entered its appearance, the defendants received additional time to answer or otherwise respond to O'Sullivan's claims.

# LEGAL STANDARD

A motion to disqualify counsel requires a two-step analysis where a court (1) considers whether there is an ethical violation and if so, then, (2) determines whether disqualification is appropriate to remedy the violation. *alfaCTP Sys., Inc. v. Nierman*, No. 15-cv-9338, 2016 WL 687281, at *4 (N.D. Ill. Feb. 19, 2016). Disqualification of counsel is a "drastic measure" imposed only "when absolutely necessary." *Black Rush Mining, LLC v. Black Panther Mining*, 840 F. Supp. 2d 1085, 1089 (N.D. Ill. 2012) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). Because disqualification deprives a party of the representation of their choice, disqualification motions—although sometimes legitimate and necessary—are "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). "There must be solid evidence to support an allegation of conflict." *Fematt v. Finnigan*, No. 11-cv-1530, 2012 WL 3308759, at *2 (N.D. Ill. Aug. 13, 2012). The moving party therefore bears a heavy burden of proving the facts required for disqualification. *alfaCTP Sys., Inc.*, 2016 WL 687281, at *4; *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

# ANALYSIS

Sailsbery argues three reasons why McGrath and the Firm[3] should be disqualified from representing Fairman in this lawsuit: (1) McGrath and the Firm are also her attorneys and she has not consented to waive the conflict raised by their adverse representation of Fairman, (2) McGrath will be a necessary witness for her discrimination and retaliation claims, and (3) the Firm's representation of Fairman is materially limited by its concurrent loyalty to the Village,

---

[3]      Although Sailsbery frequently refers solely to McGrath in her memoranda, it is clear that she seeks the disqualification of both McGrath and the Firm for all the reasons in which she references McGrath, so the Court treats her references to McGrath as references to McGrath and the Firm where applicable.

who is also a Defendant here, because Fairman faces punitive damages.[4] The Court addresses

Sailsbery's arguments in turn.

## I.     Conflicts Based on the Firm's and McGrath's Attorney-Client Alleged Relationships with Sailsbery

Sailsbery argues that she has a current attorney-client relationship with the Firm because

they continue to represent her on matters relating to the FOIA requests and that she previously

had attorney-client relationships arising out of the Smith EEOC Charge and advice she received

concerning Fairman's orders.  Fairman and his attorneys dispute that an attorney-client

relationship was ever formed; however, if a current attorney-client relationship exists, McGrath

and the Firm cannot represent Fairman adversely to Sailsbery.  *See alfaCTP Sys., Inc.*, 2016 WL

687281, at *4.  Model Rule 1.7 states that a lawyer ordinarily "shall not represent a client if the

representation involves a concurrent conflict of interest," which exists if (1) "the representation

of one client will be directly adverse to another client" or (2) "there is a significant risk that the

representation of one or more clients will be materially limited by the lawyer's responsibilities to

another client, a former client or a third person or by a personal interest of the lawyer."  Model

Rules of Prof'l Conduct r 1.7(a).[5]

---

[4]     While the parties argue for and against disqualification based on varying sources of ethical rules, the Court analyzes Sailsbery's motion under the American Bar Association's Model Rules of Professional Conduct ("Model Rules"), which this district has generally adopted as its rules of professional conduct. *See* N.D. Ill. L.R. 83.50.  Civil Local Rule 83.50 establishes one exception to its general adoption of the Model Rules and instructs the Court to turn to the "rules of Professional Conduct in the state in which the lawyer's principal office is located" when the Model Rules are silent on the issue raised or are inconsistent with the state's rules. *Id.*  McGrath is admitted to practice in Illinois and the Firm's office is located in Evergreen Park, Illinois, meaning that the Court would turn to the Illinois Rules of Professional Conduct after the Model Rules. *See id.*  The Court has not found the Model Rules at issue to be lacking in guidance on the issues at hand nor to be materially inconsistent with their analogues in the Illinois Rule of Professional Conduct.

[5]     Notwithstanding the existence of such a concurrent conflict of interest under Model Rule 1.7(a), the lawyer may represent the client if (1) "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client," (2) "the representation is not prohibited by law," (3) the representation does not involve the assertion of a claim by one client against

A different test applies to former representations where there is no current attorney-client relationship with Sailsbery but there was a prior relationship.  In instances where an attorney is adverse to a former client, which Sailsbery also alleges here, Model Rule 1.9 provides that a lawyer who "formerly represented a client in a manner shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirm[ed] in writing."  Model Rules of Prof'l Conduct r. 1.9(a).  To determine whether a former relationship is substantially related to a current relationship, the Seventh Circuit uses a three-part analysis in which: (1) the Court makes a factual reconstruction of the scope of the former legal representation, (2) the Court determines whether it is reasonable to infer that the confidential information allegedly exchanged in the former representation would have been given to a lawyer representing a client in such matter, and (3) the Court determines whether the information is relevant to the issues raised in the pending litigation adverse to the former client.  *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255–56 (7th Cir. 1983).  If, after evaluating the facts, there is a substantial relationship between the representations, then a presumption arises that the attorney received relevant confidential information during the prior representation, which can sometimes be rebutted.  *Id.* at 256; *see also Analytica, Inc. v. NPD Rsh., Inc.*, 708 F.2d 1263, 1267 (7th Cir. 1983) (unrebuttable presumption where entire firm switches sides on issue).

But the Court need not consider these questions under Model Rules 1.7 or 1.9 if no attorney-client relationship exists or existed between Sailsbery and McGrath and the Firm.  *See Fematt*, 2012 WL 3308759, at *3 & n.1 (finding no error in magistrate judge's decision to forego "substantially related" test after determining that no attorney-client relationship existed).

another client represented by the lawyer in the same litigation or other proceeding before a tribunal," and (4) "each affected client gives informed consent, confirmed in writing."  Model Rules of Prof'l Conduct r. 1.7(b).

Therefore Sailsbery first has the burden to demonstrate a current or former attorney-client relationship. *See Black Rush Mining, LLC*, 840 F. Supp. 2d at 1090 (analyzing attorney-client relationship first when determining whether client conflict existed).

The attorney-client relationship can be express or implied through formal or informal consent. *See Westinghouse Elec. Corp. v. Kerr-McGee Corp.* (*Westinghouse I*), 580 F.2d 1311, 1316–17, 1319–20 (7th Cir. 1978); *Black Rush Mining, LLC*, 840 F. Supp. 2d at 1090; *Mindy's Rest., Inc. v. Watters*, No. 08 C 5448, 2009 WL 500634, at *2 (N.D. Ill. Feb. 27, 2009).[6] "An attorney-client relationship exists when the lay party submits confidential information to the law party with reasonable belief that the latter is acting as the former's attorney." *Fematt*, 2012 WL 3308759, at *2 (citation omitted). While an express attorney-client relationship is often accompanied by a formal contract or a payment of fees, a court can find an implied relationship after considering factors such as the nature of the work performed and the circumstances in which confidential information was exchanged. *See Black Rush Mining, LLC*, 840 F. Supp. 2d at 1090; *Mindy's Rest., Inc.*, 2009 WL 500634, at *2.

A. **Implied Relationships Relating to Sailsbery's Police Duties in the Smith EEOC Charge, FOIA Responses, and Fairman's Orders**

In her opening brief, Sailsbery claims that she has formed several implied attorney-client relationships while the Firm has served as the Village's counsel. This argument, however, assumes that an attorney for the Village is also the attorney for the Village's employee and ignores Seventh Circuit law and the Model Rules' statements to the contrary that "[a] lawyer

---

[6]  Fairman argues for and bases his opposition on a much more exacting standard, where an attorney-client relationship exists only if "both the attorney and the client consent to its formation," the client "explicitly authorize[s] the attorney to work," and the attorney "indicate[s] an acceptance of that authority to work." Doc. 17 at 3 (quoting *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 909 N.E.2d 848, 861, 392 Ill. App. 3d 1, 330 Ill. Dec. 826 (Ill. Ct. App. 2009)); *see also id.* at 5. The Seventh Circuit has made clear that this is not the law in federal court. *See Westinghouse I*, 580 F.2d at 1320; *GTE N., Inc. v. Apache Prods. Co.*, 914 F. Supp. 1575, 1578 (N.D. Ill. 1996) ("Ethical questions before a district court are governed by federal case law.").

employed by a [governmental organization] represents the entity." *Westinghouse I*, 580 F.2d at

1318; *see also* Model Rules of Prof'l Conduct r. 1.13(a) ("A lawyer employed or retained by an

organization represents the organization acting through its duly authorized constituents."); *id.* r.

1.13, cmt. 2 ("This does not mean, however, that constituents of an organizational client are the

clients of the lawyer."); *id.* r. 1.13, cmt. 9 ("The duty defined in this rule applies to governmental

organizations."). An employee's subjective belief that she is individually represented by the

organization's attorney is therefore insufficient, standing alone, to create an attorney-client

relationship. *See United States v. Keplinger*, 776 F.2d 678, 701 (7th Cir. 1985). Rather, the

attorney or the circumstances must make the employee's belief that she is also personally

represented at least minimally reasonable or the employee must clearly indicate to the attorney

that she believes she has formed a personal attorney-client relationship without correction from

the attorney. *See id.* Thus, Sailsbery cannot simply allege an attorney-client relationship with

the Village's attorneys but must also present evidence supporting her allegation such as a

communication with a Firm attorney about the relationship or facts that make it reasonable to

find that a personal attorney-client relationship formed.

Sailsbery argues that an attorney-client relationship arose from the Smith EEOC Charge

where she helped the Firm formulate the Village's position statement, received confidential

status reports and documents, and received communications labeled "confidential" and

"attorney-client privilege." But Sailsbery's involvement was on behalf of the Village—the only

named respondent—on whose behalf the Firm drafted the position statement.[7] The confidential

---

[7]     While Sailsbery argues that she was the properly named respondent by pointing out that Title VII
states employer defendants are "persons engaged in an industry affecting commerce who has fifteen or
more employees," and specifically relying on the word "person," she also admits that persons such as
supervisors and agents of an employer cannot be held individually liable under Title VII. *See* Doc. 19 at
3 (quoting 42 U.S.C. § 2000e(b)). Sailsbery's interpretation of who is liable for discrimination under

communications with Firm attorneys also do not demonstrate that her belief in an attorney-client

relationship was reasonable because the emails and other documents were clearly not directed

only to Sailsbery because they included other Village employees and the "confidential" legends

in emails and documents indicated simply that the communications were not for public release

outside the email group.  *See Bobbit v. Victorian House, Inc.*, 545 F. Supp. 1124, 1127–28 (N.D.

Ill. 1982) (director-shareholder overstated sharing of confidences with corporation's attorneys

where his characterization of exchanges as "confidential" was in the sense of "non-public").

Sailsbery also has not shown why the email that bore a "privilege" legend was meant to identify

an attorney-client relationship between the sending attorney and herself, individually, rather than

a privilege between the attorney and the Village, where she knew the Firm represented the

Village and other Village employees also received the same emails.  And, while Sailsbery may

have thought that Smith's EEOC charge targeted her personally, she has not provided evidence

that she sought out separate advice or work from the Firm.  Instead, all the evidence supports the

conclusion that the Firm was retained to represent the Village—and not the individual employees

named within the charge—as the client, and that no circumstances exist under which it would be

reasonable to extend the representation to Sailsbery as well.

Similarly, for the FOIA requests, Sailsbery provides no evidence showing a reasonable

belief in a personal attorney-client relationship or that she informed the Firm she thought they

were her personal attorneys.  Instead, Sailsbery only indicates that she consulted with Firm

attorneys to assist in the Village's response to the FOIA requests, which as stated, is not

sufficient.  *See Keplinger*, 776 F.2d at 701.  She has not alleged or provided evidence that she

---

Title VII is not enough to show that she required an attorney for the EEOC charge filed against the
Village.

10

needed or sought personal representation to answer the FOIA requests, which were directed to the Village and not her.

Finally, Sailsbery argues that she formed an attorney-client relationship with McGrath when she sought his legal advice to determine if she had to follow Fairman's orders. But Sailsbery's conclusory allegations are insufficient to show that a personal attorney-client relationship with McGrath developed in this consultation. She also has not alleged or provided evidence that she communicated to McGrath that she believed he was her personal attorney, instead implying that she sought McGrath's advice to get the Village's attorney's analysis of her concerns. Sailsbery does not articulate what was said that constituted legal advice or how that advice would prejudice her here, only generally describing the conversations with McGrath as seeking information about the scope of her duties as an employee of the Village's police department and if those duties specifically required her, the deputy chief of police, to follow the orders of another Village official whom she did not believe was her superior in the police department. *See United States ex rel. Cericola v. Ben Franklin Bank*, No. 99 C 6311, 2003 WL 21476020, at *4 (N.D. Ill. June 23, 2003) (bank employee offered no evidence that she sought advice for personal matters rather than bank matters); *Bobbitt*, 545 F. Supp. at 1127 (no attorney-client relationship formed with corporation attorney when director-shareholder sought attorney's advice on corporation business). Further, any belief that Sailsbery had that she was seeking advice for her personal interests would not appear minimally reasonable in light of her knowledge that McGrath and the Firm were her employer's "village attorneys" since 2011. *See Cericola*, 2003 WL 21476020, at *4 (bank employee offered no evidence why it would be reasonable for her to believe attorney for bank was providing her personal legal advice).

11

Therefore, the Court finds that Sailsbery has not established that she formed an implied attorney-client relationship with McGrath and the Firm.

### B. Express Relationship Relating to the *O'Sullivan* Lawsuit

While Sailsbery has not provided sufficient evidence to demonstrate an attorney-client relationship with the Firm or McGrath based on the Smith EEOC charge, the FOIA responses, or her requests for advice on Fairman's orders, Sailsbery may have formed an express attorney-client relationship with the Firm because the Firm filed an appearance on her behalf in the *O'Sullivan* Lawsuit. In Illinois state courts, an appearance gives rise to a rebuttable presumption of an express attorney-client relationship. *See Zych v. Jones*, 406 N.E.2d 70, 74, 84 Ill. App. 3d 647, 40 Ill. Dec. 369 (Ill. Ct. App. 1980) *abrogated on other grounds by Warren v. Williams*, 730 N.E.2d 512, 515, 313 Ill. App. 3d 450, 246 Ill. Dec. 487 (Ill. Ct. App. 2000). The same is suggested in the Seventh Circuit. *See Keplinger*, 776 F.2d at 700 n.14 (distinguishing corporation's lawyer "appearing" with employees at investigation meeting from lawyer filing "formal appearance" for employees that would suggest attorney-client relationship); *United States v. Sanders*, 979 F.2d 87, 90–92 (7th Cir. 1992) (in criminal case, attorney appearance form could have been used to demonstrate attorney-client relationship).

Here, there is no dispute that the Firm filed an appearance for Sailsbery, but there is a factual dispute as to whether Sailsbery consented to an express attorney-client relationship with the Firm. The motion to substitute, withdrawal form, and substitution order clearly state that the Firm filed an appearance for Sailsbery, but, because new counsel replaced the firm before the parties filed a responsive pleading, the same documents also could suggest that Sailsbery did not want to be represented by the Firm and chose other counsel. Ordinarily, where there is a dispute

of fact as to whether Sailsbery consented to an attorney-client relationship with the Firm relating to the *O'Sullivan* Lawsuit, and the Court is unable to resolve the factual dispute on the limited evidence before it, an evidentiary hearing is required. *See Cromley v. Bd. of Educ. of Lockport Twp. High Sch. Dist. 205*, 17 F.3d 1059, 1064 (7th Cir. 1994) (where a district court does not conduct an evidentiary hearing or make findings of fact, a reviewing appellate court will forego the deferential abuse of discretion standard of review); *Freeman*, 689 F.2d at 721 (same); *GTE N., Inc.*, 914 F. Supp. at 1580 (evidentiary hearing is normally required to resolve motion to disqualify when parties dispute facts and do not provide supporting affidavits); *Kaskie v. Celotex Corp.*, 618 F. Supp. 696, 700 (N.D. Ill. 1985) (ordering evidentiary hearing where parties contested factual issues and sole affidavit was insubstantial). However, here, an evidentiary hearing is unnecessary, because even presuming an attorney-client relationship, Sailsbery does not argue that there is a conflict created by the *O'Sullivan* Lawsuit, and the evidence is insufficient to meet her burden of establishing an ethical violation. *See Mindy's Rest., Inc.*, 2009 WL 500634, at *3 (presuming attorney-client relationship and determining that there was no need for disqualification); *GTE N., Inc.*, 914 F. Supp. at 1580 & n.5 (foregoing evidentiary hearing where facts that were not in dispute allowed court to resolve motion to disqualify).

Presuming there was an attorney-client relationship for the *O'Sullivan* Lawsuit, the relationship would have ended on or around December 9, 2013, when the state trial court granted the Firm "leave to withdraw its appearance as counsel for Defendants Holevis and Sailsbery," *see* Doc. 17-2 at 3, and therefore would have ended almost two years before Sailsbery filed this lawsuit on November 23, 2015. *See alfaCTP Sys., Inc.*, 2016 WL 687281 at *4 (noting that current versus former client status is usually determined at the time of the complaint and that representations generally are considered to end at the conclusion of the attorney's work for the

client); *Kaskie*, 618 F. Supp. at 700 (disqualification motion based on events that had already occurred involved subsequent representations). Sailsbery therefore must show a violation of Model Rule 1.9, which requires her to provide evidence of a substantial relationship between the *O'Sullivan* Lawsuit representation and the Firm's representation of Fairman in this suit.

"The substantial relationship test is not a rule of substantive law but a measure of the quantum of evidence required for proof of the existence of the professional obligation." *Westinghouse Elec. Corp. v. Gulf Oil Corp.* (*Westinghouse II*), 588 F.2d 221, 224 (7th Cir. 1978) (requiring only evidence of the scope of the legal representation rather than proof of the actual receipt of the allegedly relevant confidential information). When analyzing a conflict under Model Rule 1.9, the Court must first determine the scope of the prior representation and its legal issues based on the facts of that particular situation. *See id.*; Model Rules of Prof'l Conduct r. 1.9, cmt. 2 (noting the purpose of Model Rule 1.9 is to ensure that an attorney cannot change sides on a legal issue common to the prior and the current representation). Here, Sailsbery has not provided the Court with any evidence describing the Firm's representation of her in the *O'Sullivan* Lawsuit, thus failing to meet her burden. *See ATT Sys. Co. v. Tylman*, No. 03 C 50326, 2004 WL 2044256, at *4 (N.D. Ill. Aug. 31, 2004) (plaintiffs' motion to disqualify could not be granted where they failed to provide facts sufficient to allow court to reconstruct the scope of a prior legal representation). At best, the available evidence shows that the representation was short lived, with the Firm replaced by Johnson & Bell before a responsive pleading was filed. Such a short time frame suggests that the subject matter of the representation was limited and cuts against any argument that the representation would be substantially related to Sailsbery's current suit. *Mindy's Rest., Inc.*, 2009 WL 500634, at *3 (presuming attorney-client relationship,

the short temporal length of the representation suggested no substantial relationship to the current matter).

Further, presuming at this stage that confidences were exchanged between Sailsbery and the Firm during the *O'Sullivan* Lawsuit, Sailsbery also has not alleged or provided any facts showing that the confidential information would be relevant to her current lawsuit. With no information describing O'Sullivan's claims or Sailsbery's defense of those claims, it is impossible to determine whether the Firm now finds itself able to better defend Sailsbery's employment discrimination and retaliation claims after defending Sailsbery in the *O'Sullivan* Lawsuit. *See id.* (no evidence that the prior representation would have provided confidential information that was relevant to the plaintiff's case against the defendant where plaintiff and defendants met with attorney together). Therefore, even presuming an attorney-client relationship in the *O'Sullivan* Lawsuit, the Court cannot find a conflict under Model Rule 1.9 where Sailsbery has provided no evidence that the *O'Sullivan* Lawsuit is substantially related to this lawsuit.

## II.     Conflicts based on McGrath serving as an Attorney-Witness

Sailsbery also seeks to disqualify McGrath and the Firm, claiming that McGrath is an indispensable witness in this case. Model Rule 3.7 bars a lawyer from acting as the trial attorney when he or she will likely be a "necessary witness" on a contested issue, unless disqualifying the lawyer would create a substantial hardship for the client. Model Rules of Prof'l Conduct r. 3.7. Sailsbery argues that McGrath "will be called as a witness in this case," but conditions that certitude on "if" the Village places at issue the advice it received from McGrath regarding the Village's investigations of Sailsbery. Doc. 9 at 8–9; *see also* Doc. 19 at 7.

Sailsbery's own statements thus undermine her argument, underscoring that disqualifying McGrath as an attorney-witness at this stage is speculative and premature because the case is in its infancy and it is unclear whether any advice received from McGrath will become an issue in this case. Until Defendants respond to Sailsbery's claims, there are no contested issues in this case, and if the Village does raise the defenses predicted by Sailsbery, Sailsbery has not shown why McGrath must be the one to testify, instead of, perhaps, the recipients of McGrath's advice and reports. It is not enough that McGrath may be the "best" witness and Sailsbery wants to call him, specifically, to the stand; Model Rule 3.7 requires that McGrath's testimony must be "necessary." *Walton v. Diamond*, No. 12 C 4493, 2012 WL 6587723, at *2 (N.D. Ill. Dec. 14, 2012) (a necessary witness is not the same as the best witness and the attorney's testimony must be unobtainable elsewhere). Sailsbery's request is also premature because Model Rule 3.7 only requires the disqualification of trial counsel at the time of trial and would not prevent McGrath from representing Fairman even if McGrath were a necessary witness. *See alfaCTP Sys., Inc.*, 2016 WL 687281, at *6 (noting concerns of jury confusion and appearance of impropriety raised by Rule 3.7 "do not come into play unless and until the attorney-witness is also trial counsel"); *see also Walton*, 2012 WL 6587723, at *4 (declining to disqualify attorney likely to become a necessary witness at trial where case was in early stages of litigation). Thus Sailsbery may raise this issue at the appropriate time in this litigation, if necessary. Even if the Court were to disqualify McGrath at that point, however, Model Rule 3.7 would not prohibit the Firm from continuing to represent Fairman at trial. *See* Model Rules of Prof'l Conduct r. 3.7(b) (if a lawyer is disqualified as a necessary witness, her firm can still participate in the trial unless another ethical problem under Model Rule 1.7 or 1.9 exists); *alfaCTP Sys., Inc.*, 2016 WL 687281, at *6.

**III.    Conflicts arising from the Firm's Representation of Multiple Defendants**

Sailsbery also seeks to disqualify the Firm and McGrath from representing Fairman,[8]

arguing that (1) the Firm represents the Village in other matters; (2) the Firm represents Fairman

here in his defense of Sailsbery's claims; (3) Sailsbery alleges that Fairman violated 42 U.S.C.

§ 1983 and seeks punitive damages for that violation; and (4) the Village will indemnify

Fairman, a Village official, under the Illinois Tort Immunity Act, 745 Ill. Comp. Stat. 10/2-302

for compensatory damages but not punitive damages, meaning that the Firm must choose

between framing a defense that focuses on limiting compensatory damages to please the

Village—its current client in other matters—and limiting punitive damages to please Fairman—

its current client in this litigation.[9]   In situations of dual representation, the Seventh Circuit has

"rejected the almost absolute prohibition on dual representation of a municipality and its

employees" and instead required courts to remain sensitive to conflicts in order to address them

when they merit disqualification. *Ross v. United States*, 910 F.2d 1422, 1432 (7th Cir. 1990).  A

conflict could develop here, although the risk appears small at this time.  If Fairman faces

punitive damages at trial for Sailsbery's Section 1983 claim and the Village has chosen to

---

[8]      The Court notes that Sailsbery makes this argument as to both Fairman and Fairman Consultants, Ltd., but, at this time, McGrath and the Firm only have filed an appearance for Fairman in this case and Fairman Consultants is currently unrepresented.  Therefore, Sailsbery cannot argue either that there is a conflict of interest created by the Firm representing Fairman Consultants or that the Firm must be disqualified from representing Fairman Consultants.

[9]      The Court rejects Fairman's argument that because Sailsbery is not the Firm's client, she cannot raise the issue of a conflict arising from the Firm representing Fairman here and the Village in other matters.  A movant need not be a current or former client in order to raise an ethical issue with the Court. *See O'Malley v. Novoselsky*, Nos. 10 C 8200 & 11 C 110, 2011 WL 2470325 (N.D. Ill. June 14, 2011) (rejecting defendant's motion to disqualify plaintiffs' attorneys for conflict of interest between plaintiffs and noting Seventh Circuit warning that attorneys should raise any potential ethical problem); *Smith v. Martin*, 819 F. Supp. 733, 735 (1992) (considering plaintiff's motion *in limine* to prevent individual Chicago police officers facing punitive damages from being represented by their employer's corporation counsel); *Guillen*, 956 F. Supp. at 1420 (N.D. Ill. 1997) (considering plaintiff's motion to disqualify defendants' counsel from representing third-party witnesses).  Sailsbery raises a potential conflict even where the Firm and McGrath do not represent the Village here. *See Smith*, 819 F. Supp. at 735 & n.1.

indemnify Fairman, Fairman may ask the Firm to defend him in such a way that focuses on reducing punitive damages at the cost of reducing compensatory damages. *See Smith*, 819 F. Supp. at 735.

Still, the potential conflict is far from ripe where it relies on many hypotheticals, and Sailsbery's motion is premature until some adversity between Fairman and the Village crystalizes. *Cf. Ross*, 910 F.2d at 1432 (noting potential for conflict after reversing summary judgment and reviving claims); *Smith*, 819 F. Supp. at 737 (analyzing conflicts at eve of trial); *see also Guillen*, 956 F. Supp. at 1424 (noting that cases disqualifying city attorneys from also representing employees are chiefly concerned with the impact of dual representation at trial). Sailsbery filed this motion very early in her lawsuit; the Defendants have not responded to Sailsbery's claims, established a position on liability and damages, or participated in any discovery or depositions. The Court must also respect Fairman's choice of counsel, which should not be hastily disrupted. Where there is no immediate conflict, the Court will not disqualify Fairman's attorney—but in an attempt to avoid a future conflict that would disrupt the proceedings and potentially prejudice Fairman by disqualifying his attorney late in litigation, the Court orders McGrath to fully apprise Fairman and the Village of the risks of concurrent representation and obtain informed consent now. *See Guillen*, 956 F. Supp. at 1424 (collecting cases and ordering proof of consent to concurrent representations).

**CONCLUSION**

For the foregoing reasons, the Court denies Sailsbery's motion to disqualify [9].

McGrath is directed to file an affidavit by April 29, 2016 that he has fully disclosed to the

Village and Fairman the risks and advantages of concurrent representation and that the Village

and Fairman have provided written informed consent to McGrath and the Firm serving as

Fairman's counsel in this lawsuit.

Dated: April 11, 2016

_____
SARA L. ELLIS
United States District Judge