IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REBECCA SAILSBERY, )<br>    Plaintiff, )<br>v. )<br>     )<br>VILLAGE OF SAUK VILLAGE, an Illinois )<br>municipal corporation; MAYOR DAVID HANKS, )<br>individually; J.W. FAIRMAN, individually and in his )<br>official capacity as Public Safety Director; and )<br>FAIRMAN CONSULTANTS, LTD., an Illinois )<br>corporation, )<br>    Defendants. ) | Case No. 15-CV-10564<br><br>Hon. Judge Sara Ellis |

**VILLAGE OF SAUK VILLAGE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

NOW COMES Defendant, VILLAGE OF SAUK VILLAGE (the "Village"), by and through its attorney, K. Austin Zimmer of Del Galdo Law Group, LLC., and replying in support of its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(6) [Dkt. 27; the "Motion"], states as follows:

**Background**

Plaintiff REBECCA SAILSBERY ("Sailsbery"), a police employee of the Village, filed her eight (8)-count Complaint in this case on November 23, 2015.[1] Therein, Sailsbery alleges that co-defendant Hanks wanted neither women nor individuals who had filed lawsuits previously to be in leadership roles, and so the Village, via one or more Agents, sabotaged her career prospects in a variety of challenged ways.

Observing that Sailsbery's grievances heavily invoked her unrequited desire to head the Village's police department, however, on April 1, 2016 the Village moved for dismissal on several

---

[1] For reference: Count I-Title VII retaliation; Count II-Title VII gender discrimination; Count III-Title VII demotion; Count IV-Title VII hostile work environment; Count V-§ 1983 discrimination; Count VI-§ 1983 discrimination; Count VII-§ 1983 discrimination; and Count VIII-Monell liability. Counts I-IV, and VIII are pled against the Village; Counts V-VII are pled against co-defendants MAYOR DAVID HANKS ("Hanks"), J.W. FAIRMAN ("Fairman") and FAIRMAN CONSULTANTS, LTD. ("Consultants"), respectively. Collectively, Hanks, Fairman and Consultants are the "Agents."

grounds. Chiefly, the Village argued Sailsbery's sought-after promotion invoked a policy making appointee position exempt from Title VII's reach, precluding Counts I-III from stating a claim. The Village also argued Count III's redundancy, Sailsbery's failure to point to verbal or physical conduct of a sexual nature to support Count VII, and her failure to identify relevant policy making authority to support Count VIII's attempt to tie the Village via *Monell* liability to Counts IV-VI pled against individual defendants.

Responding [see Dkt. 37; the "Response"], Sailsbery contends that the policy making appointee exemption of Title VII does not apply due to state civil service laws, that the Village misconstrues her harassment claim and that the Village's policy making arguments are ultimately inconsistent.

Thus, in reply, the Village elaborates on the operation of the Title VII exemption and the effect of Sailsbery's characterizations of her harassment and *Monell* claims. The Village remains entitled to dismissal, and again respectfully requests this Honorable Court dismiss Sailsbery's Complaint with prejudice, in whole or in part.

**Argument**

I. Sailsbery's Title VII claims are barred by the policy making appointee exception.

Sailsbery oddly opens her defense of her Complaint – in discussing Count I – by choosing two older cases where retaliation was not found to re-state the same necessary pleading elements offered by the Village via *Stephens v. Erickson*, 569 F.3d 779 (7th Cir. 2009). *Mtn.* p. 3-4 cf. *Resp.* p. 3, citing *Rennie v. Dalton*, 3 F.3d 1100 (7th Cir. 1993) and *Nichols v. S. Ill. University-Edwardsville*, 510 F.3d 772 (7th Cir. 2007). Yet, as each side's authority offers the same requirements, her analysis nevertheless follows the same framework as the Village's despite reaching different conclusions.

    a. <u>There is no actionable adverse action in failure to promote to an exempt position in Count I</u>.

First, she notes that protected activity is uncontested here; then, she proceeds to argue purportedly sufficient adverse action and disparate treatment of a similarly situated peer. Aside from the incorrect assumption that the Village "concedes … [she] was performing her duties satisfactorily," so far so good, at least as to the right focus for this Court. <u>See</u> *Resp.* p. 3 cf. *Mtn.* p. 5, 8 ("on its face tells a story of … unsatisfactory effort"; "directly pleads she was not meeting job expectations.").

But from there, the Village's view of Sailsbery claims begins to diverge. Sailsbery cites case law explaining that a failure to promote or a re-assignment of duties can be an adverse action, and that adverse action is typically found where there is detrimental impact to an employee's (1) current wealth, (2) future wealth, or (3) current work conditions. To which the Village replies: As abstract propositions these may well be true, but such background propositions are beside the point here.

Whatever her list of grievances, simply assuming Sailsbery's Complaint shows adverse action because nominally invoking lost pay and altered quantities of work is unresponsive to the Village's overarching objection: there is no legally protectable entitlement to a status quo arrangement or lock-step advancement at the policy making appointee level in the first place. It is therefore not actionably adverse to any employee to insist that a municipality is allowed to set its own desired administrative approach.

The exempt employee exception thus precludes Title VII's otherwise broad prohibitions from absolute application to sensitive, high-level positions. <u>See</u>, e.g. *Mtn.* p. 6, citing *Americanos v. Carter*, 74 F.3d 138 (7th Cir. 1985); <u>see also</u> *O'Reilly v. Montgomery County*, 2003 U.S. Dist. LEXIS 4585, at *19-29 (S.D. Ind. 2003) (the test questions whether the relevant position authorizes meaningful input into issues with room for principled disagreement). This is not the Village's "alternative theory," as Sailsbery puts it, but a predicate omission that foundationally bars her claim.

Sailsbery's approach would extend the reach of Title VII to encourage federal courts to commandeer the top structure of innumerable local offices under the guise of benign regulation.

Sailsbery meekly argues that the policy making appointee exemption does not apply in any event because of a sub-exception for individuals subject to state and subdivision civil service laws. She does so without actually citing purportedly relevant statutes. With good reason: State law is clear that police officers above the rank of captain shall not be included in classified service. 65 ILCS 5/10-1-17.

Further, her attempt conflates her entitlement as to rank as an officer with the executive promotions she pursues via this suit. By Village ordinance, the chief position does not "have the office of police officer." Village Code of Ordinances (the "Code") Ch. 42, Art. II, § 42-21. By Illinois law, appointment to such a position is "considered as on furlough from the rank … held immediately prior." 65 ILCS 5/10-2.1-4. Under the same enactment, deputy chiefs serve "at the discretion of the chief" and "may be appointed from any rank." *Ibid*. And they are also outside the typical civil service bounds in that "if removed … [they] revert to the rank currently held" – all the while being simultaneously permitted to take promotional exams to enhance their civil service classification unrelated to whether or not they maintain their title as deputy. *Ibid*.; see also *Murray v. Vill. of Hazel Crest*, 2011 U.S. Dist. LEXIS 10284 (N.D. Ill. Jan. 31, 2011) (J. Hart) (discussing chief's discretion) and *Szewczyk v. Bd. of Fire & Police Comm'rs*, 381 Ill.App.3d 159 (2d. Dist. 2008) (discussing reversion to sergeant's rank).

The civil service sub-exception essentially tracks with the public policy civil service laws embody: Where a state legislature has insisted that a covered position be attainable by merit, the use of Title VII protections to avoid the influence of discrimination is appropriate. But where civil service laws do not apply because the legislature has recognized other priorities – such as a municipality's ability to select its own leadership, then recognition of the exemptions to Title VII is

appropriate. There can be no establishment of invidious classification or discriminatory motive where the effective operation of government would otherwise be compromised by requiring a public official to retain a potential political enemy in a position of responsibility. See, e.g. *Hanson v. Twp.*, 2016 WL 1359379 (N.D. Ill. Apr. 6, 2016); *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999) Instead, it is long-standing law in Illinois that the normal operation of boards of fire and police commissioners is suspended at the policy making level. See, e.g. *People ex rel. Borzewski v. Rayniak*, 19 Ill.App.2d 417 (1st Dist. 1958) (purpose in granting city councils the power to appoint is to enable councils to carry out administrative policies). Sailsbery's attempt to establish an adverse action in spite of this is ultimately unavailing.

    b. <u>There is no similarly situated comparator without requisite specificity</u>.

Sailsbery's analysis of her attempt to name a comparator is similarly unmoored from that pleading element's purpose. The Village agrees that similarly situated employees "need not be identical" but must be comparable in "material respects." *Resp.* p. 5. The disagreement is in what purpose that threshold requirement serves: The Village contends it is uncontroversial that the point is to eliminate "different or mitigating circumstances" which could otherwise explain disparate treatment. *Mtn.* p. 7, citing *Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012).

Sailsbery somehow reads this as a "nonsensical" attempt to blame the "victimized." *Resp.* p. 6. That is a gross distortion of the Village's argument. The Village need not "cite to any case law to support the proposition that the victims of discrimination and harassment can only name … comparators that have also been victimized" because that is not the Village's position. The Village's position is simply that where one candidate has already twice sued her employer over allegations which were never admitted but settled as a matter of purchasing peace, and advances regular complaints to superiors that they do not find substantiated, another explanation for disparate treatment is plainly apparent – and they need not credit her unproven accusations any more than

they need let her evaluate her own job performance. Tenure is not the only qualification for police chief, and Village officials are entitled to seek a positive working relationship with their top brass – an expectation which makes Sailsbery's candidacy materially different from that of her would-be comparator.

Evidence of similarity requires specificity. *Maulding Dev., LLC. v. City of Springfield, Ill.*, 453 F.3d 967 (7th Cir. 2006). If Evans relationship with the Village was as strained, Sailsbery had every opportunity to say so. Here, Sailsbery has not provided detail, and her *prima facie* retaliation case therefore again fails for lack of a mandated pleading element.

c. <u>Sailsbery's Count II and Count III fail accordingly</u>.

Moreover, though the bulk of the parties briefing on Title VII is devoted to the failure to promote claim which leads Sailsbery's Complaint, the same issues doom her other iterations of a Title VII claim as well – because their elements overlap, too. Though the alleged violations in Count II and III are are purportedly different (gender discrimination, and demotion, respectively), each is still in search of an actionably adverse action and a viable comparator treated differently. Thus, just as she did with Count I, Sailsbery cites case law discussing the abstract availability of Title VII remedies, the civil service sub-exception and continues on to incorporate her Count I arguments. *Resp.* p. 7-8.[2]

Yet, none of these arguments carry water where Sailsbery has not cited a civil service law removing her from the Title VII policy making appointee exemption, explained how a statutorily defined deputy department head is not a policy making position, nor detailed Evans' material comparability. This Court should thus dismiss Counts II and III for the same reasons.

---

[2] Notably, while contending that Count III is not redundant of Count I, Sailsbery also suggests incorporation of her entire response to Count I can suffice to explain her position on Count III.

II. <u>Sailsbery's work environment claim remains insufficiently tied to gender hostility</u>.

Sailsbery's defense of her hostile work environment claim, meanwhile, contests the Village's evaluation of Count VII within a sexual harassment framework as missing a supposedly plausible claim for non-sexual yet still gender based harassment. But what Sailsbery misses is that it is still the gender-charged nature of challenged activity which animates such claims. Abstractly, potentially prohibited acts may be actionable where correlated animus is pled; concretely, they are not actionable under a gender hostility theory absent some set of facts pointing to actual causation.

Absent some reason to believe challenged incidents were in fact gender based beyond a plaintiff's speculation, a listing of grievances, no matter how long, does not suffice. In other words, even by Sailsbery's own authority, she still must prove that the challenged acts were "based on" her gender class status. *Porter v. City of Chicago*, 700 F.3d 944, 955 (7th Cir. 2012). As co-defendant Fairman points out in separate reply, limited reference to gender discrimination does not suggest discriminatory animus where the facts pled pertain to alleged retaliation. <u>See</u> *Fairman Reply*, [Dkt. 47] at p. 1.[3]

Sailsbery attempts to support her Count VII claim by reference to allegations of unsafe orders to work without protective equipment, improper orders on how to deal with grant applications and internal complaints, and purportedly fabricated disparaging comments. She concludes that she sufficiently ties her allegations to gender by virtue of the claim that Mayor David Hanks ("Hanks") did not believe women should be in leadership positions as "the backdrop for numerous examples." *Resp*. p. 10. But the connection is not obviated despite Sailsbery's implication.

The Seventh Circuit has previously found that even where a co-worker introduced a plaintiff as being in charge of "cookies with sprinkles" and said he hated "pushy, aggressive women" in tandem with non-explicitly sex-based mistreatment (such as striking her with a clipboard), the

---

[3] Moreover, to the extent applicable, the Village hereby adopts and incorporates co-defendants' additional points in support of dismissal as reflected in their reply briefs.

mosaic as a whole did not show objectively severe or pervasive gender based treatment. See *Beard v. Don McCue Chevrolet, Inc.*, 2012 U.S. Dist. LEXIS 99618, at *29, citing *Scruggs v. Garst Seed Co.*, 587, F.3d 836, 841 (7th Cir. 2009). Here Sailsbery is similarly missing a link between her class status and a manifestation of animus directly targeting the same.

The Village remains entitled to dismissal of her Count VII.

III.  Sailsbery's *Monell* allegations remain insufficient.

Finally, Sailsbery attempts to paste over failings in her *Monell* claim by twisting the Village's observations about her pleading as if it were a contention of the Village itself. Sailsbery complains that the Village purportedly asserts without citation that Hanks and J.W. FAIRMAN ("Fairman") were acting outside the scope of their authority and so outside the bounds of *Monell* liability. But this is not the Village's assertion: As the Village did directly cite, it is Sailsbery (and **not** the Village) who states that acts were taken in violation of Village police department orders, policies and procedures. *Mtn.* p. 10, citing *Compl.* ¶ 63. The Village merely points out that if Sailsbery's allegations are believed, then Hanks and Fairman were not advancing any Village policy to target protected classes of individuals, but rather defying policies barring the same.

The same is true to the full extent Sailsbery points to Hanks and Fairman purportedly not posting positions or making interim appointments on a faux-temporary basis – Sailsbery cites no provision of the Village Code instructing any official to take such actions. In short, while the Village also denies that its agents actually did contravene its policies, the point the Village is making is only that where Sailsbery claims Hanks and Fairman hijacked control, *Monell* and its progeny stand as a barrier to direct *respondeat superior* liability for unauthorized action, however final it may have been as a practical matter.

Put another way, the Village did not dispute custom or practice allegations only to the extent it understood Sailsbery's Complaint not to make any. Where Sailsbery responds that "Hanks' current

policy of retaliating against employees … is … the Village's custom, policy and practice" – the Village replies that its Code says otherwise, and the attempt to turn Hanks' policy making authority as cabined by the Code into a Village policy wherever Sailsbery alleges he or Fairman exceeded it does not satisfy the requirements of *Monell* pleading.

Lastly, Sailsbery does not attempt to defend any "class of one" allegation, instead arguing that she brings a different sort of claim, and such labeling is not made in "good faith." This gratuitous shot at counsel is wholly unnecessary as the Village's underlying Motion merely tied together loose ends "to the extent Sailsbery's claim" amounted to a class of one suit. *Mtn.* p. 11. Regardless, having abandoned that option, Sailsbery waives any rebuttal to the Village's observation that such an interpretation of her pleading would also not fly if attempted.

**Conclusion**

Taken together, Sailsbery's Complaint offers a litany of charges against the Village and its agents without a remedy because the reach of Title VII is not so great as to inspire federal courts to install state and local department heads at the whim of plaintiffs. She offers redundant, barred claims and theories which do not tie gender animus to challenged work place disputes, and demonstrate the Village had no policy of retaliation or gender discrimination even if any had occurred. The Village is entitled to dismissal of her claims with prejudice, in whole or in part.

WHEREFORE, the Village respectfully requests this Honorable Court grant its Motion, dismiss all counts pled against the Village with prejudice and order any and all such further relief as is equitable and just.

                                        Respectfully submitted,

                                        THE VILLAGE OF SAUKVILLAGE

                                        By:    */s/ K. Austin Zimmer*
                                                             One of its attorneys

K. Austin Zimmer (#6276227)
DEL GALDO LAW GROUP, LLC.
*Attorneys for the Village of Sauk Village*
1441 S. Harlem Avenue
Berwyn, Illinois 60402
(708) 222.7000 (t) | (708) 222.7001 (f)