UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA SAILSBERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 10564 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| VILLAGE OF SAUK VILLAGE, an Illinois | ) | |
| Municipality; MAYOR DAVID HANKS, | ) | |
| individually; J.W. FAIRMAN, individually | ) | |
| and in his official capacity as Public Safety | ) | |
| Director; FAIRMAN CONSULTANTS, LTD. | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Passed over for Chief of Police and later demoted, Plaintiff Rebecca Sailsbery, currently a police sergeant for the Village of Sauk Village (the "Village") and formerly its Deputy Chief of Police, sues Defendants the Village, its Mayor David Hanks, its Public Safety Director, J.W. Fairman, and Fairman's consulting company, Fairman Consultants, Ltd., alleging gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and 42 U.S.C. §§ 1981[1] and 1983. The Village [27], Mayor Hanks [28], and Fairman [24] each move to dismiss Sailsbery's claims against them.[2] Because the Court finds that the Chief of Police of the Village is a discretionary policymaking position, the Court dismisses Sailsbery's equal protection claims against Mayor Hanks and Fairman in Counts V and VI to the extent they allege she was not promoted to Chief of Police. But because the Court is

---

[1] Sailsbery purports to bring her suit under § 1981, but her complaint references § 1981 only in the preamble and no party addresses § 1981 in the briefing on the motion to dismiss. The Court understands Sailsbery to only allege violations of Title VII and § 1983.

[2] Fairman Consultants, Ltd. has not filed an appearance in this matter and did not file a motion to dismiss.

unable to determine at the motion to dismiss stage that Chief of Police is an appointed policymaking position specifically exempt from the protections of Title VII, because Sailsbery need not allege a similarly situated comparator at the pleading stage, and because she sufficiently alleges her treatment was motivated by her gender, the Court denies the Village's motion to dismiss Sailsbery's Title VII claims in Counts I, II, III, and IV. Because the Village is the proper defendant for Title VII claims, the Court dismisses Sailsbery's claims against Mayor Hanks and Fairman in Counts V and VI to the extent they allege violations of Title VII. Finally, because Sailsbery sufficiently alleges that Mayor Hanks and Fairman violated her constitutional rights and were final policymakers at the Village, the Court denies the Village's motion to dismiss Sailsbery's § 1983 claim against the Village in Count VIII.

## BACKGROUND[3]

Sailsbery has worked in the Village's police department for twenty-three years. Between 2009 and 2010, she was demoted from Deputy Chief of Police to sergeant after Mayor Lewis Towers became Mayor of the Village and subsequently sued the Village, eventually settling the lawsuit. In 2012, a former Chief of Police would not promote her to Deputy Chief of Police, resulting in a second lawsuit.

After Mayor Towers resigned in November 2012, Mayor Hanks became Mayor. Sailsbery did not dismiss her pending lawsuit, so Mayor Hanks set out on a course to retaliate against her and others who did not dismiss their pending lawsuits. The Deputy Chief of Police position sat vacant between 2010 and 2012, and after Sailsbery submitted an application for the position, Mayor Hanks did not allow the Chief of Police at the time, Tim Holevis, to appoint

---

[3] The facts in the background section are taken from Sailsbery's complaint and are presumed true for the purpose of resolving Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). The Court previously summarized the complaint's allegations in an opinion and order on Sailsbery's motion to disqualify Defendants' attorneys. Doc. 31.

Sailsbery, Holevis' first choice, because of her lawsuit. Mayor Hanks hired a management consulting firm to rank candidates for Deputy Chief of Police, and it ranked Sailsbery most qualified. In November 2013, Sailsbery filed a second pending federal lawsuit relating Mayor Towers and a prior Chief of Police, Robert Fox. Still, Sailsbery remained a sergeant until September 2014, when she was promoted to Deputy Chief of Police.

In March 2015, Mayor Hanks proposed, and the Village's Board of Trustees approved, the creation of a new Village position, Public Safety Director, to oversee the police and fire departments and report to the Mayor. Fairman became Public Safety Director. Holevis immediately resigned his position as Chief of Police. Fairman, who was not a police officer, could not assume the Chief of Police role.

Sailsbery received orders to assume the responsibilities of Chief of Police, but she was not promoted to acting or interim Chief of Police, even though regulations called for this type of promotion. Mayor Hanks refused to promote Sailsbery because of her gender and in retaliation for her prior discrimination claims. Hanks directly told Sailsbery she would not be promoted to Chief of Police. Sailsbery filed an EEOC charge in April 2015. Fairman and Mayor Hanks then began a campaign impugning Sailsbery's credentials to serve as Chief of Police. In response, in May 2015, Sailsbery made another complaint of discrimination and retaliation to the Village. In May 2015, Mayor Hanks and Fairman offered the Chief of Police position to Jack Evans, another police sergeant, but Evans declined the offer. And in May 2015, when Sailsbery attempted to block Fairman from entering an area reserved for police officers, Fairman pushed past her to get inside. Fairman and Mayor Hanks continued to try to get Sailsbery fired, including secretly investigating her, overworking her, and filing false complaints against her. Fairman falsely derided Sailsbery's work performance to a Village Trustee. Mayor Hanks told a Village Trustee

that that Sailsbery would get hers and confirmed he was trying to make Sailsbery fail as Deputy Chief of Police. Fairman gave her more and more work, in an attempt to cause her to falter on impossible assignments. When Sailsbery internally complained to the Village, its retained law firm denied her claims and failed to conduct an investigation.

Mayor Hanks appointed a new Chief of Police in August 2015, denying Sailsbery a promotion because of her gender and in retaliation for her discrimination claims. Hanks claimed a three-member committee selected the new Chief of Police, but two Trustees who were committee members announced that was not true and that Mayor Hanks had individually appointed the Chief of Police and the committee had not done its job. Mayor Hanks and Fairman then demoted Sailsbery from Deputy Chief of Police to sergeant, but Fairman ordered Sailsbery to continue performing the tasks of the Deputy Chief and Chief of Police. Fairman then demoted Sailsbery again, to patrol sergeant, and, on the day of the demotion, he sent her to patrol without any equipment.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.  **Retaliatory Failure to Promote (Count I)**

Sailsbery alleges that while she was Deputy Chief of Police, she was denied a promotion to Chief of Police in retaliation for the discrimination allegations she made against the Village and Hanks. To state a claim for retaliation in violation of Title VII, Sailsbery must allege that she engaged in statutorily protected activity and, as result of that activity, suffered a materially adverse action. *Hatcher v. Bd. of Trs. of S. Ill. Univ.*, --- F.3d ----, 2016 WL 3770555, at *3 (7th Cir. July 14, 2016), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, --- F.3d ----, 2016 WL 4411434 (7th Cir. Aug. 19, 2016).

The Village moves to dismiss Count I, arguing that Sailsbery did not plead a similarly situated comparator and that she did not experience an adverse action because she had no statutorily protected right to be named Chief of Police.

First, "the pleading standards in Title VII cases are different from the evidentiary burden a plaintiff must subsequently meet," and there is no requirement at the motion to dismiss stage that a plaintiff plead a similarly situated comparator sufficient to meet the *prima facie* case outlined by *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (citations omitted) (internal quotation marks omitted). "[U]nder a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglass* framework does not apply in every employment discrimination case."

5

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992 152 L. Ed. 2d 1 (2002). The Village's argument regarding similarly situated comparators, thus, fails.

The Village also argues that Sailsbery does not allege an adverse action because Title VII does not protect Sailsbery's right to be promoted to Chief of Police. Specifically, the Village argues that the Chief of Police position is exempt from the Title VII's protections because it is a policymaking position that does not fall within the definition of "employee" positions protected by the statute, so Sailsbery experienced no harm in being denied a promotion to Chief of Police.

The denial of a promotion to the chief of a municipal safety agency, like the Village's police department, is not actionable under Title VII if the position that the plaintiff seeks is not within Title VII's protective scope. *See Deneen v. City of Markham*, No. 91 C 5399, 1993 WL 181885, at *5 (N.D. Ill. May 26, 1993) (granting summary judgment against plaintiff to the extent he claimed that he was unlawfully denied promotion to fire chief position that the court found to be exempted from Title VII's "employee" definition). This is because Title VII does not cover "appointees on the policymaking level." *Opp v. Office of the State's Attorney of Cook County*, 630 F.3d 616, 619 (7th Cir. 2010) (quoting 42 U.S.C. § 2000e(f)); *Levin v. Madigan*, No. 07 C 4765, 2011 WL 2708341, at *9 (N.D. Ill. July 12, 2011) ("*Levin II*"). To determine whether a position is exempt as an appointed policymaking position, the Court must determine if the position is a policymaking position under *Americanos v. Carter*, 74 F.3d 138 (7th Cir. 1996) and then determine whether the position is appointed by an elected official. *Opp*, 630 F.3d at 619–20, 621–22; *Levin v. Madigan*, No. 07 C 4765, 2008 WL 4287778, at *2–4 (N.D. Ill. Sept. 12, 2008) ("*Levin I*") (finding Title VII required bifurcated analysis into whether position was policymaking and whether position was appointed).[4]

---

[4] The Seventh Circuit has not definitively stated whether "appointment" is actually necessary under for the "appointee on the policymaking level" exemption to apply. *See Levin v. Madigan*, No. 07 C 4765,

A position is an *Americanos* policymaking position if it "authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Opp*, 630 F.3d at 619; *Americanos*, 74 F.3d at 141 (noting that test is indistinguishable from the political patronage test used by the Supreme Court in *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980) and *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) to determine if a government official is employee who can be lawfully fired for political reasons). "Discretion is also important: when an employee exercises broad discretionary power, the state cannot easily fire the employee for insubordination even though 'the employee's performance frustrates the implementation of the administration's policies.'" *Embry v. City of Calumet City, Ill.*, 701 F.3d 231, 236 (7th Cir. 2012) (quoting *Selch v. Letts*, 5 F.3d 1040, 1044 (7th Cir. 1993)). The Court reviews "the 'powers inherent in a given office,' rather than the actual functions the occupant of that office performed." *Americanos*, 74 F.3d at 141 (citation omitted). The Court can determine these powers as a matter of law "without the aid of a finder of fact 'when the duties and responsibilities of a particular position are clearly defined by law and regulations.'" *Opp*, 630 F.3d at 621 (citation omitted).

---

2011 WL 2708341, at *9 (N.D. Ill. July 12, 2011), *aff'd,* 692 F.3d 607 (7th Cir. 2012) ("[T]he Seventh Circuit has not had occasion to define the exact parameters of what it means to be an 'appointee' for purposes of the Title VII and ADEA exemptions because in all of the cases before it, the law clearly stated that the plaintiff was appointed by a public official."). In *Opp*, however, the Seventh Circuit analyzed whether the position was an *Americanos* policymaking position and whether the position was appointed. *Opp*, 630 F.3d at 619–20, 621–22. Before *Opp*, many district courts only needed to determine whether the plaintiff held a policymaking position, not whether the plaintiff was also appointed to the position by an elected official. *See Bervid v. Alvarez*, 647 F. Supp. 2d 1006, 1010–11 (N.D. Ill. 2009) (noting that the court did not need to speculate whether bifurcated analysis was necessary because plaintiff was in a policymaking position and appointed by an elected official). However, other district courts analyzed whether a policymaking position was appointed by an elected official, determining that the statutory language in the Title VII requires appointment. *See Levin I*, 2008 WL 4287778 at *2–4. This Court follows the bifurcated analysis in *Opp and Levin I* to determine if Title VII's exemption for appointees on the policymaking level applies.

The Court begins with the municipal laws addressing the powers of the Chief of Police. The Village's municipal code describes the Chief of Police's powers:

> (a) All members of the police department shall serve subject to the orders of the police chief.
>
> (b) The police chief shall be custodian of all lost, abandoned or stolen property recovered in the village.
>
> (c) The police chief shall be authorized to serve writs, summonses, and other processes, but no patrolman shall serve any such summons or process except on the order of the police chief or the mayor.
>
> (d) The police chief may make or prescribe such general and specific orders for the guidance of the members of the police department as he shall see fit.
>
> (e) The police chief shall be the keeper of the village jail, and shall have custody of all persons incarcerated therein. He shall keep such records and make such reports concerning the activities of his department as may be required by statute or ordinance. The chief shall be responsible for the performance by the police department of all its functions.

Village of Sauk Village Municipal Code § 42-20. It is clear from the Village municipal code that the Chief of Police is in charge of the Village's entire police force, possessing the power to dictate how the Village's police officers conduct their jobs. The Chief of Police is "responsible for the performance by the police department of all its functions" and responsible for all Village police officers, providing "general and specific orders for the guidance of the members of the police department" as the Chief of Police sees fit. *Id.* The Village's municipal code grants the Chief of Police broad discretionary powers that he or she may wield as he or she deems necessary. Therefore the Court concludes that the Chief of Police is an *Americanos*

policymaking position.[5] *See Opp*, 630 F.3d at 621 (finding that district court properly determined plaintiffs' positions had policymaking status as a matter of law because plaintiffs had inherent policymaking authority, clearly defined by statute).

Having determined that the Chief of Police is an *Americanos* policymaking position as matter of law, the Court turns to whether the Chief of Police is appointed. *See Opp*, 630 F.3d at 621–22 (reviewing whether plaintiff was appointed by elected official); *Levin I*, 2008 WL 4287778 at *2–4 (finding Title VII required further analysis into whether position was appointed). Other courts have suggested that a position is appointed for purposes of Title VII only if an elected official or an elected office appoints the position. *See Opp*, 630 F.3d at 621–22 (addressing argument that position was not appointed by State's Attorney, an elected official); *Levin I*, 2008 WL 4287778 at *4–5 (finding at motion to dismiss stage that plaintiff assistant attorney general was not appointed by an elected official because he was appointed by chief of consumer protection agency with approval from deputy attorney general). Thus the Court analyzes whether the Chief of Police is appointed by an elected official or office.

Illinois law allows a board of fire and police commissioners to appoint members of a municipality's police department, including the Chief of Police, unless the municipality otherwise provides by ordinance that the Chief of Police is not to be appointed by the board. 65 Ill. Comp. Stat. 5/10-2.1-4. The Village established a board of fire and police commissioners,

---

[5] Sailsbery essentially agrees, arguing that even if the Chief of Police is an *Americanos* policymaking position, the policymaking exemption does not cover "employees subject to the civil service laws of a State government, governmental agency, or political subdivision." 42. U.S.C. § 2000e(f). However, the Court need not address that question because, as shown below, it is unclear at the motion to dismiss stage whether the Chief of Police is appointed. Further, under Illinois law, "police officers above the grade of captain . . . shall not be included in such classified service" and the "chief of the police department may be included in the classified service if the corporate authorities so provides by ordinance." 65 Ill. Comp. Stat. Ann. 5/10-1-17. There is no Village municipal code or ordinance that includes the Chief of Police in the civil service laws. To the contrary, the Chief of Police does not have the office of police officer. Village of Sauk Village Municipal Code § 42-21. Therefore, Sailsbery has not shown that the Chief of Police is subject to the civil service laws.

9

pursuant to 65 Ill. Comp. Stat. 5/10-2.1-1 *et seq.* Village of Sauk Village Municipal Code § 2-346. The board consists of three members, appointed by the mayor with the consent of the corporate authorities. *Id.* §§ 2-347 & 2-348. But there is no Village municipal code or ordinance that provides for the police chief to be appointed by any appointing authority other than the board of fire and police commissioners, suggesting that the Chief of Police is not appointed by elected officials, but instead by the board of fire and police commissioners, who themselves are appointed by the mayor.[6] Sailsbery's allegations, however, suggest that the Chief of Police is appointed by the Village Mayor, an elected official. Specifically, she alleges that the Chief of Police was appointed "by Mayor Hanks" and that "it was Mayor Hanks, not the committee that made the decision of who would be appointed chief of police." Doc. 1 ¶¶ 59, 60.[7] Therefore, it is not clear as a matter of law whether the Village's Chief of Police is an appointed position as required by Title VII, and the parties will need to conduct discovery on the appointment process for the Chief of Police position. Therefore, the Court denies the Village's motion to dismiss to the extent that it argues that the Chief of Police position is an appointee on the policymaking level exempt from the protections of Title VII. *Compare Levin I*, 2008 WL 4287778 at *4–*5 (finding at motion to dismiss stage that plaintiff's alleged employment position was not an appointee falling within exemption to employee status under Title VII and the ADEA), *with Levin II*, 2011 WL 2708341, at *8 & n.5, *9–*11 (concluding at summary judgment with the benefit of a fuller record not available at motion to dismiss stage that plaintiff's position was

---

[6] In contrast, the Village municipal code specifically calls for the chief of the fire department to be appointed by the Village mayor. Village of Sauk Village Municipal Code § 30-68 ("The chief of the fire department shall be appointed by the mayor with the advice and approval of the board of trustees and shall serve at the pleasure of the mayor.").

[7] The Court also notes that Sailsbery alleges that "Mayor Hanks claimed that the new Chief of Police was chosen based on the findings of a three-member committee assembled to find a new chief." Doc. 1 ¶ 58.

an appointed position exempt from Title VII coverage); *see also Deneen*, 1993 WL 181885, at *5 (N.D. Ill. May 26, 1993) (at summary judgment stage, finding that fire chief position was appointed by mayor). The Court thus denies the Village's motion to dismiss Count I.

## II. Disparate Treatment Failure to Promote (Count II)

Sailsbery alleges in Count II that the Village also discriminated against her when it did not appoint her as its Chief of Police. The Village argues that Sailsbery's claim fails for the same reasons that Count I fails, arguing that the Chief of Police position was an exempt, appointed policymaking position under Title VII and that she does not allege any similarly situated comparators. The Court denies the Village's motion for the same reasons it denies the motion to dismiss Count I.

## III. Retaliatory Demotion to Sergeant (Count III)

In Count III, Sailsbery alleges that she was demoted from Deputy Chief of Police to detective sergeant and then from detective sergeant to patrol sergeant in retaliation for her alleged protected activity. The Village treats Count III as redundant to Counts I and II, arguing that the reasons to dismiss Sailsbery's claims in Counts I and II apply equally to Count III. The Court denies the Village's motion for the same reasons it denies the motion to dismiss Counts I and II.

## IV. Hostile Work Environment (Count IV)

Sailsbery alleges in Count IV that the Village created a hostile work environment in retaliation for her alleged protected activity in violation of Title VII and 42 U.S.C. § 1981, but in opposition to the Village's motion to dismiss, Sailsbery makes clear that she alleges a hostile work environment because of her gender. To sufficiently plead a hostile work environment claim, Sailsbery must allege that "(1) [her] work environment was both subjectively and

11

objectively offensive; (2) [her gender] was the cause of the harassment; (3) the conduct was severe and pervasive; and (4) a basis for employer liability exists." *Butler v. Nat'l R.R. Passenger Corp.*, 936 F. Supp. 2d 920, 928 (N.D. Ill. 2013) (citation omitted). The Village argues that Sailsbery does not allege any harassment based on her gender. But Sailsbery alleges that Mayor Hanks did not like women in leadership positions and acted against Sailsbery because of this, and that Fairman ratified Mayor Hanks' belief by helping Mayor Hanks execute his agenda against Sailsbery. These allegations are enough to infer at the pleading stage that Fairman and Mayor Hanks' actions were based on Sailsbery's gender. *See Luevano*, 722 F.3d at 1028 (general, conclusory allegations are enough to establish gender-based motivation in a complaint); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081, 1084 (7th Cir. 2008) ("[A] plaintiff alleging employment discrimination under Title VII may allege these claims quite generally). Therefore, the Court denies the Village's motion to dismiss Count IV.

## V.  Equal Protection § 1983 Claims (Counts V and VI)

In Count V, Sailsbery alleges that Mayor Hanks discriminated against her in violation of § 1983. In Count VI, she brings an identical claim against Fairman. "To state a valid claim for relief under Section 1983, 'a plaintiff must allege that he or she was (1) deprived of a federal right, privilege, or immunity (2) by any person acting under color of state law." *Hall v. City of Berwyn*, No. 11 C 122, 2011 WL 4888883, at *2 (N.D. Ill. Oct. 12, 2011) (quoting *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005)). The Court analyzes both claims together "[b]ecause [Sailsbery] had an adequate opportunity to respond to all of the Defendants' motions, [so] the Court can impugn the arguments made by any [D]efendant to all of the Defendants to the extent the arguments are equally effective at barring a

claim." *Gluck v. WNIN Tri-State Pub. Media, Inc.*, 879 F. Supp. 2d 999, 1001 n.3 (S.D. Ind. 2012) (citing *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986)).

Sailsbery seeks to hold Mayor Hanks and Fairman liable for violating Title VII. A defendant cannot be held liable under § 1983 for an alleged violation of Title VII if the defendant cannot be sued directly under Title VII. *Huebschen v. Dep't of Health & Soc. Servs.*, 716 F.2d 1167, 1170 (7th Cir. 1983), *abrogated on other grounds by Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Mayor Hanks and Fairman cannot be held liable under Title VII in their individual capacity. *See, e.g.*, *Igasaki v. Ill. Dep't of Fin.*, No. 15-CV-03693, 2016 WL 232434, at *2 (N.D. Ill. Jan. 20, 2016) (supervisor could not be held liable in individual capacity for claim under Title VII, for Title VII only allows for suit against the plaintiff's actual employer). Further, Count VI relies on Title VII claim against Fairman in his official capacity,[8] which means Sailsbery's claim is redundant to the Title VII claims against the Village, Sailsbery's actual employer, and so the Court dismisses Count VI as redundant to the extent that it claims Fairman is liable for a violation of Title VII in his official capacity. *Id.*

However, there is no dispute that Sailsbery can allege Mayor Hanks and Fairman violated the Equal Protection Clause. To do so, Sailsbery must allege that (1) Mayor Hanks and Fairman discriminated against her based on her membership in a definable class and (2) they acted with a "nefarious discriminatory purpose." *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996).

Mayor Hanks and Fairman argue that the law does not support an equal protection claim for retaliation. The right to be free from being retaliated against for filing a lawsuit or engaging

---

[8] Mayor Hanks assumes that because he is named as "Mayor," Sailsbery's § 1983 claim is against him in his official capacity. As a prerequisite of a Section 1983 suit, "a civil rights plaintiff must specify whether suit is brought against the defendant in his official capacity or in his individual capacity." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). The complaint makes clear that Sailsbery is suing Mayor Hanks in his individual capacity; the caption and Count V's prayer for relief explicitly state this.

13

in other protected activity is properly vindicated under the First Amendment or Title VII, but not in an equal protection claim. *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Hallmon v. Sch. Dist. 89, Cook County, IL*, 911 F. Supp. 2d 690, 706–07 (N.D. Ill. 2012) ("Although § 1983 allows for suits for [class] discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, the Equal Protection Clause does not prohibit state actors from retaliating against persons who complain of equal protection violations—that is, it does not contain an anti-retaliation provision analogous to that of Title VII."). Sailsbery cannot bring a claim that Mayor Hanks and Fairman violated the Equal Protection Clause by retaliating against her *because of her protected activity*. *Boyd*, 384 F.3d at 898.

But, Sailsbery may allege that Mayor Hanks and Fairman violated the Equal Protection Clause by retaliating against Sailsbery *because of her gender* rather than just because of her protected activity. *See Locke v. Haessig*, 788 F.3d 662, 672 (7th Cir. 2015) (noting that retaliation is discrimination and if motivated by a plaintiff's protected characteristic, then retaliation is enough for a claim of discrimination in violation of the Equal Protection Clause); *see also Rangel v. Brown*, 445 F. Supp. 2d 936, 938 (N.D. Ill. 2006) (plaintiff sufficiently stated Equal Protection Clause violation by alleging discriminatory discharge for complaining about sexual harassment because the allegation contained "the inference that she was discharged at least in part because she was a woman"). Here, Sailsbery alleges that Mayor Hanks did not believe that women should be in leadership positions and that, with Fairman's help, he passed her over for promotion and planned to eliminate police positions she occupied because of her gender. Further, she alleges that Mayor Hanks and Fairman also acted against her because she complained about mistreatment she felt she received because of her gender. Sailsbery sufficiently alleges that Mayor Hanks and Fairman retaliated against Sailsbery because she is a

14

woman. *See Michalowski v. Rutherford*, 82 F. Supp. 3d 775, 795 (N.D. Ill. 2015) (plaintiff sufficiently alleged gender-based violation under § 1983 with conclusory allegations that wrongs were "based upon Plaintiff's gender"); *Rangel*, 445 F. Supp. 2d at 938.

Finally, both Mayor Hanks and Fairman argue that because Sailsbery's claims are based on a failure to appoint her to Chief of Police and her subsequent demotion from Deputy Chief of Police, Count VI's equal protection claim fails because Deputy Chief and Chief of Police are *Americanos* policymaking positions. An employment decision concerning an *Americanos* policymaking position does not violate the Equal Protection Clause. *See Hanson v. Milton Township*, --- F. Supp. 3d ----, 2016 WL 1359379, at *3 (N.D. Ill. Apr. 6, 2016) (dismissing plaintiffs' equal protection claim where plaintiffs' roles were *Americanos* policymaking positions).[9] As discussed above, the Chief of Police is an *Americanos* policymaking position as a matter of law. Therefore, the Court dismisses Sailsbery's equal protection claims in Counts V and VI to the extent they rely on a failure to promote Sailsbery to Chief of Police.

Mayor Hanks and Fairman argue that the Deputy Chief of Police is also an *Americanos* policymaking position. The deputy chief of police is granted and exercises "all of the functions, powers and duties delegated to him [or her] by the Chief of Police and which are necessary and proper to attain/retain an efficient/effective Department capable of protecting and serving the Village of Sauk Village with the highest level of professionalism/integrity." Village of Sauk Village Ordinance No. 00-14, Ex. A, ¶ 6.a. These duties include:

> 1. Enforcing the policies and procedures, rules and regulations, general and specific orders for the government of the members and employees of the Department as well as the laws of the State and Village. Such enforcement may extend

---

[9] The Court notes that the application of *Americanos* is controlling here; there is no need to determine if the position is appointed because that is a requirement specific to Title VII. *See Levin II*, 2011 WL 2708341 at *9 (noting distinction between being an *Americanos* appointee and being "an 'appointee' for purposes of the Title VII and ADEA exemptions").

15

to subordinates outside the Deputy Chief's usual assigned sphere of administration if the law enforcement objective or reputation of the Department so requires or if no other provision is made for personnel temporarily unsupervised. This authority shall not be exercised unnecessarily. Should a Deputy Chief require a subordinate outside his sphere of administration to leave a regular assignment, the Deputy Chief will inform the subordinate's own supervisor as soon as possible.

2. Investigating any/all complaints or charges brought against any member(s) of the Department as directed by the Chief of Police.

3. Relieving from duty any subordinate member(s) of the Department for good cause[.]

4. Conferring with subordinates for the purpose of giving instructions so as to promote lawful conduct, uniformity, efficiency and effectiveness within the Department.

5. Keeping the Chief of Police informed of any event(s) which may impair/effect [sic] the image, efficiency, effectiveness of the Department, Village, or the individual employee.

6. Attending all meetings as requested/required by the Chief of Police.

7. Keeping daily work records and personnel rating sheets and each [sic] other books/records as the Chief of Police may direct.

8. Delegate such of his powers and assign such duties as he may deem necessary for the efficient/effective administration of that portion of the Department to which he is assigned by the Chief of Police.

9. Periodically inspect all reports, personnel, facilities and equipment so as to insure that they are performing /being utilized to the highest degree of efficiency, effectiveness and in conformity with the laws of the State and village as well as the rules and regulations, policies and procedures, general and specific orders of the Department.

*Id.* at Ex. A, ¶ 6.b.

Unlike the Chief of Police, it is not clear as a matter of law that the Deputy Chief of Police has any input on the formation of policy. Further, it is not clear as a matter of law that the Deputy Chief has any discretion to influence the policing function. Still, Sailsbery alleges that her role of Deputy Chief of Police took on the role and duties of the Chief of Police as the *de facto* Chief. These issues indicate that the parties must take discovery on duties and responsibilities of the Deputy Chief of Police before the Court can determine whether the position is an *Americanos* policymaking position. *See Levin II*, 2011 WL 2708341, at *11 (finding at summary judgment that plaintiff's position was an *Americanos* policymaking position in part because plaintiff was authorized to perform duties on behalf of or in place of an elected official); *Deneen*, 1993 WL 181885 at *5 (finding at summary judgment that defendant failed to provide evidence that deputy fire chief took over role of fire chief during the chief's absence). Therefore, the Court cannot conclude at the motion to dismiss stage that the deputy chief of police is an *Americanos* policymaking position as a matter of law.

## VI.  *Monell* § 1983 Claim (Count VIII)

In Count VIII, Sailsbery alleges that the Village is liable under § 1983 for Mayor Hanks and Fairman's treatment of her. Although the Village cannot be held liable under § 1983 on a *respondeat superior* theory, *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002), the Village may be liable for the unconstitutional act of an individual exercising the Village's authority that "is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Monell*, 436 U.S. at 690. Sailsbery alleges that the Village is liable because

17

Mayor Hanks and Fairman were officials with final policymaking authority who caused her constitutional injuries.[10]

The Village moves to dismiss Count VIII, arguing that Sailsbery alleges that Mayor Hanks and Fairman had to seek permission and review from superiors and so they could not have had final policymaking authority. Sailsbery alleges that Mayor Hanks and Fairman each had final policymaking authority to carry out the acts she alleges they committed. Mayor Hanks' position as Mayor and Fairman's position as Public Safety Director, with direct oversight of the entire police department, plausibly suggest that they could exercise final policymaking authority over the employment and treatment of Sailsbery at the police department. *See Schlessinger v. The Chicago Hous. Auth.*, No. 12 C 3733, 2013 WL 5497254, at *0 (N.D. Ill. Oct. 2, 2013) (employment titles of defendants suggested that they had final policymaking authority). She also specifically alleges that it was Mayor Hanks and Fairman who mistreated her, allegedly because of Sailsbery's gender and Mayor Hanks' aversion to women in leadership positions. To determine whether [Mayor Hanks and Fairman] were policymakers, the Court will have to consider "whether their decisions were constrained by polices of other officials . . . and within the scope of their delegated authority." *Id.* at *6 n.1. However, summary judgment is a better stage to determine these questions than the motion to dismiss stage. *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) (in *Monell* claims, discovery can help weed out unmeritorious claims quickly); *Howard v. Sheriff of Cook County*, No. 15 C 9384, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016) (noting that

---

[10] The Court notes that Sailsbery cannot support an equal protection claim by alleging she was denied a promotion to Chief of Police, so there can be no *Monell* liability for such a claim.

general allegations are sufficient for a *Monell* claim). These facts are enough to state a *Monell* claim at the motion to dismiss stage.

## CONCLUSION

For the foregoing reasons, the Court denies the Village of Sauk Village's motion to dismiss [27], denies in part and grants in part Mayor David Hanks' motion to dismiss [28], and denies in part and grants in part J.W. Fairman's motion to dismiss [24]. The Court dismisses Sailsbery's equal protection claims in Count V and VI against Mayor Hanks and Fairman to the extent they allege she was not promoted to Chief of Police, but the Court denies Defendants' motions to dismiss Sailsbery's claims regarding her time as Deputy Chief of Police. The Court denies the Village's motion to dismiss Sailsbery's Title VII claims in Counts I, II, III, and IV, but the Court dismisses Sailsbery's claims against Mayor Hanks and Fairman in Counts V and VI to the extent they allege violations of Title VII. Finally, the Court denies the Village's motion to dismiss Sailsbery's *Monell* claim in Count VIII. Defendants are ordered to answer the remaining allegations in the complaint by September 29, 2016.

Dated: September 8, 2016

SARA L. ELLIS
United States District Judge