UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA SAILSBERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 10564 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| VILLAGE OF SAUK VILLAGE, an Illinois | ) | |
| Municipality; MAYOR DAVID HANKS, | ) | |
| individually; J.W. FAIRMAN, individually | ) | |
| and in his official capacity as Public Safety | ) | |
| Director; FAIRMAN CONSULTANTS, LTD. | ) | |
| an Illinois Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Rebecca Sailsbery alleges that she was wrongly denied a promotion and then demoted by her employer the Village of Sauk Village (the "Village"), its mayor Mayor David Hanks, and its Public Safety Director, J.W. Fairman, and Fairman's private company, Fairman Consultants, Ltd. Sailsbery also is the defendant in another lawsuit involving the Village. Her attorney in that lawsuit left his law firm to join the law firm representing Hanks. Sailsbery moves to disqualify her former attorney and his new firm from representing Hanks [118]. Because Hanks' law firm screened Sailsbery's former attorney from this litigation and can certify the screening to Sailsbery, the Court does not find that disqualification is appropriate and denies Sailsbery's motion.

## BACKGROUND

After Sailsbery filed this action, Shirley Moore, a woman arrested and detained by Village police, filed suit against Sailsbery, other police officers, and the Village. *See Moore v. Vill. of Sauk Village*, No. 16 C 2861 (N.D. Ill. filed May 20, 2016). Moore alleges that Sailsbery

and the other Village police officers violated Moore's civil rights during an arrest and detention at the Village's police station. The law firm of HeplerBroom represents Sailsbery in the *Moore* litigation. One of the attorneys that worked on the case for Sailsbery and filed her answer to Moore's complaint was Gabriel Judd. During his time on the case, Sailsbery alleges that she gave Judd "numerous facts about the incidents that gave rise to the *Moore* litigation and facts about [this] litigation pursuant to the attorney-client privilege." Doc. 118 at 2. Sailsbery sat for her deposition in this litigation on May 25, 2017.

Around August 7, 2017, Judd accepted a partnership offer at Lewis Brisbois, the law firm that represents Hanks in this litigation. Before Judd accepted that offer, Lewis Brisbois ran a conflict check on Judd's practice. Lewis Brisbois only screened the client base that Judd intended to bring to Lewis Brisbois, not other former clients and prior representations. The conflict check did not indicate any actual or potential conflicts created by Judd's involvement in the *Moore* litigation.

On September 25, 2017, Sailsbery filed this motion to disqualify. On September 29, 2017, Lewis Brisbois established a conflict screen ethical wall, screening Judd from this litigation. Lewis Brisbois set up the ethical wall because the firm's managing partner learned of Sailsbery's motion to disqualify the firm. The conflict screen rules followed by Lewis Brisbois include obtaining a conflict waiver from their affected client; screening attorneys, files, and electronic data; and internal verification that the firm's rules are being followed. Judd has not worked on this litigation.

**LEGAL STANDARD**

A motion to disqualify counsel requires a two-step analysis where the Court (1) considers whether there is an ethical violation and then, if so, (2) determines whether disqualification is

appropriate to remedy the violation. *alfaCTP Sys., Inc. v. Nierman*, No. 15-cv-9338, 2016 WL 687281, at *4 (N.D. Ill. Feb. 19, 2016). Disqualification of counsel is a "drastic measure" imposed only "when absolutely necessary." *Black Rush Mining, LLC v. Black Panther Mining*, 840 F. Supp. 2d 1085, 1089 (N.D. Ill. 2012) (quoting *Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir. 1983)). Because disqualification deprives a party of the representation of their choosing, disqualification motions—although sometimes legitimate and necessary—are "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982). "There must be solid evidence to support an allegation of conflict." *Fematt v. Finnigan*, No. 11-cv-1530, 2012 WL 3308759, at *2 (N.D. Ill. Aug. 13, 2012). The moving party therefore bears a heavy burden of proving the facts required for disqualification. *alfaCTP Sys., Inc.*, 2016 WL 687281, at *4; *Guillen v. City of Chicago*, 956 F. Supp. 1416, 1421 (N.D. Ill. 1997).

## ANALYSIS

Sailsbery argues that the Court should disqualify Lewis Brisbois from representing Hanks because of Judd's prior attorney-client relationship with Sailsbery. There is no dispute that Judd had an attorney-client relationship with Sailsbery in the *Moore* litigation and is now an attorney at the firm representing Sailsbery's adverse party, Hanks. Sailsbery argues that (1) a conflict exists because Judd had a prior relationship with Sailsbery on a matter substantially related to this lawsuit and that (2) Judd's conflict is imputed to Lewis Brisbois because the firm did not take the appropriate steps for screening Judd from this case when he became a partner at the firm.

## I. Prior Attorney-Client Relationship Conflict

ABA Model Rule of Professional Conduct 1.9 provides that a lawyer who "formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirm[ed] in writing." Model Rules of Prof'l Conduct r. 1.9(a). To determine whether a former relationship is substantially related to a current relationship, the Seventh Circuit uses a three-part analysis in which: (1) the Court makes a factual reconstruction of the scope of the *Moore* litigation, (2) the Court determines whether it is reasonable to infer that the confidential information allegedly exchanged in the *Moore* litigation would have been given in such a matter, and (3) the Court determines whether the information exchanged in the *Moore* litigation is relevant to the issues raised in this litigation. *LaSalle Nat'l Bank v. County of Lake*, 703 F.2d 252, 255–56 (7th Cir. 1983). If, after evaluating the facts, there is a substantial relationship between the representations, then a presumption arises that the attorney received relevant confidential information during the prior representation. *Id.* at 256. Then the attorney in question may rebut the presumption on the facts of the case. *Schiessle*, 717 F.2d at 420.

The Court begins with reconstructing the scope of the *Moore* litigation, which involves alleged violations of the civil rights of Moore, who entered the Village police station at a time when Sailsbery was Deputy Chief of Police of the Village Police Department.[1] The *Moore* plaintiff alleges that she was unlawfully arrested and left alone to attempt to commit suicide because of wrongful acts by Village police officers other than Sailsbery. The *Moore* plaintiff alleges that Sailsbery, as Deputy Chief of Police, had policymaking authority over the police department and that, when the plaintiff tried to file a formal complaint against the other officers,

---

[1] The parties reported a settlement in *Moore* on November 1, 2017. *Moore*, No. 16 C 2861, Doc. 133.

Sailsbery tried to stop her and ratified the officers' misconduct. *Moore*, No. 16 C 2861, Doc. 1 ¶¶ 77–79. The *Moore* plaintiff may also have brought claims against Sailsbery directly for her role in the plaintiff's arrest and detention. *See generally id.* (referring to "Defendant Officers" to describe many alleged constitutional violations). Judd filed an appearance for Sailsbery and signed and filed Sailsbery's answer to the complaint. *Moore*, No. 16 C 2861, Docs. 5, 28.

The Court next reviews whether it is reasonable to infer that the confidential information allegedly exchanged with Judd would have been given to a lawyer representing Sailsbery in the *Moore* litigation. Sailsbery alleges that she gave Judd confidential information "about the incidents that gave rise to the *Moore* litigation." Doc. 118 at 2. It is reasonable to infer that Sailsbery gave Judd some confidential information about that litigation—Judd filed her answer and presumably helped draft it.[2] Sailsbery also states that she gave confidential information to Judd about this litigation, saying that "[s]he disclosed . . . facts about the instant litigation." Doc. 118 at 2; *see also* Doc. 132 at 2. Hanks does not dispute Sailsbery's assertion that she gave information to Judd about this case, and Judd's declaration is silent on the subject.

The Court thus turns to the third prong, whether the confidential information exchanged is relevant to the issues raised in this litigation. Sailsbery alleges that she provided facts about the instant litigation pursuant to the attorney-client privilege, which, of course, is relevant to this litigation. Hanks does not dispute Sailsbery's account that she gave Judd facts about this case.

Therefore Sailsbery has shown that Judd's representation of Sailsbery in the *Moore* litigation and this litigation are substantially related. Hanks does not attempt to rebut the presumption of shared confidences created by the substantially related cases and Sailsbery has not provided informed consent, so the Court finds that there is a conflict under Model Rule 1.9.

---

[2] It is unclear what other work Judd did for Sailsbery on the *Moore* litigation. She does not say in her motion or reply and Judd does not describe the representation in his declaration.

## II.     Imputed Conflict

Although Judd's prior representation of Sailsbery was substantially related to this litigation and there is a conflict, that does not necessarily warrant instant disqualification. "There is an exception for the case where a member or associate of a law firm (or government legal department) changes jobs, and later he or his new firm is retained by an adversary of a client of his former firm." *Analytica, Inc. v. NPD Research., Inc.*, 708 F.2d 1263, 1267 (7th Cir. 1983). "In such a case, even if there is a substantial relationship between the two matters, the lawyer can avoid disqualification by showing that effective measures were taken to prevent confidences from being received by whichever lawyers in the new firm are handling the new matter." *Id.*

The ABA Model Rules of Professional Conduct allow a firm to use screening procedures in the case of former-client conflicts created by work at a prior firm. The Model Rules state that "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless . . . the prohibition is based upon Rule 1.9(a) or (b), and arises out of the disqualified lawyer's association with a prior firm" and

> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
>
> (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and
>
> (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable

> intervals upon the former client's written request and upon termination of the screening procedures.

Model Rules Prof'l. Conduct r. 1.10(a)(2).

Here, Lewis Brisbois has screened Judd from this litigation, placing an ethical wall that blocks him from access to the firm's work on the case. The timing of the ethical wall is not ideal—Lewis Brisbois put the ethical wall in place after Sailsbery's motion to disqualify and not earlier because the firm did not screen Judd for potential former client conflicts when it hired him—but, luckily for Lewis Brisbois, there was no harm because Judd had not worked on this litigation before the ethical wall was put in place. The Court finds that Judd was timely screened, but, because Lewis Brisbois and Judd have not shown that they complied with the rest of Rule 1.10(a)(2), the Court will require Judd to give written notice to Sailsbery in compliance with Model Rule 1.10(a)(2)(ii), including the exact efforts that he and Lewis Brisbois have undertaken to screen him from this litigation, his and Lewis Brisbois' compliance with the Model Rules of Professional Responsibility, and updates in accordance with Model Rule 1.10(a)(2)(iii).

## CONCLUSION

For the foregoing reasons, the Court denies the motion to disqualify [118]. The Court orders Gabriel Judd and Lewis Brisbois to furnish compliance statements to Sailsbery in accordance with Model Rule of Professional Responsibility 1.10(a)(2)(ii)–(iii) by December 8, 2017.

Dated: November 28, 2017

SARA L. ELLIS
United States District Judge