# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

REBECCA SAILSBERY,                     )
                                       )
      Plaintiff,                     )
                                       )    No. 15 C 10564
      v.                             )
                                       )    Judge Sara L. Ellis
VILLAGE OF SAUK VILLAGE, an Illinois   )
Municipality; MAYOR DAVID HANKS,       )
individually; J.W. FAIRMAN, individually )
and in his official capacity as Public Safety )
Director; FAIRMAN CONSULTANTS, LTD. )
an Illinois Corporation,               )
                                       )
      Defendants.                    )

## OPINION AND ORDER

Passed over for Chief of Police and later demoted, Plaintiff Rebecca Sailsbery, currently

a police sergeant for the Village of Sauk Village (the "Village") and formerly its Deputy Chief of

Police, sues Defendants the Village, its Mayor David Hanks, its Public Safety Director, J.W.

Fairman, and Fairman's consulting company, Fairman Consultants, Ltd. ("FC"), alleging gender

discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. § 2000 *et seq.*, and 42 U.S.C. § 1983. Hanks and Fairman together move for summary

judgment [160] on the claims against them, as does the Village [164]. In addition, FC moves for

judgment on the pleadings [155]. Because the Court finds that the Deputy Chief of Police is a

policymaking position, and this is the only remaining basis for her § 1983 claims, the Court

grants summary judgment in favor of Hanks and Fairman on those claims. The Court's decision

regarding Sailsbery's § 1983 claims disposes of Sailsbery's only claim against FC, and so the

Court also enters judgment in favor of FC, although it denies FC's motion for judgment on the

pleadings as moot. Further, because Sailsbery does not allege an underlying constitutional

violation, the Court grants the Village's motion for summary judgment on her *Monell* claim. In addition, the Court finds that the Chief of Police is an appointed position, precluding Sailsbery's Title VII claims against the Village for failure to promote. However, because Deputy Chief is not an appointed position, the Court denies the Village's motion for summary judgment on Sailsbery's Title VII claims for demotion and hostile work environment.

## BACKGROUND[1]

### I.    Sailsbery's Role as Deputy Chief

Sailsbery has been a police officer for the Village for over 24 years. Hanks was a Village Trustee for approximately 14 years before he became Mayor in 2012. Fairman became Village Administrator and Public Safety Director in March 2015.

Sailsbery served as Deputy Chief of Police for the Sauk Village Police Department ("SVPD") from 2007 to 2009 and again from September 14, 2014 to August 2015. While serving as Deputy Chief, she retained her civil service rank of sergeant. During the periods of time that she served as Deputy Chief from 2007 through 2015, her job duties in the role remained the same, and she had many responsibilities in that role. While Sailsbery was Deputy Chief, she acted as "chief executive officer" when the Chief was absent. Doc. 162 ¶ 25. She also had responsibility for the day to day operation of the SVPD. She maintained daily records, delegated assignments, and conducted inspections. When the SVPD also employed a Chief of Police, Sailsbery split her management roles with the Chief. The Chief was responsible for investigations, DEA, and asset forfeiture, while Sailsbery managed personnel and oversaw day to day operations. As Deputy Chief, she had direct control over her subordinates. She attended Village Board meetings on behalf of the Chief and provided the Board and the public with

---

[1] The facts in this section are derived from the Joint Statement of Undisputed Material Facts ("JSUMF"). All facts are taken in the light most favorable to Sailsbery, the non-movant.

reports.  In addition, she researched, wrote, and administered grants for the SVPD, until she reported the SVPD to the Attorney General in 2015, alleging that the SVPD fabricated the expenditure of funds.  After that report, she no longer participated in writing grants for the SVPD.  Sailsbery also ensured that the SVPD followed the collective bargaining agreements, scheduling staff based upon the terms of the agreement, and enforced SVPD rules, regulations, and general orders.  During her tenure as Deputy Chief, she did not draft any SVPD policies.

Sailsbery also conducted internal investigations as assigned by the Chief.  As Deputy Chief, she re-assigned personnel, and she had the authority to discipline subordinate officers through verbal and written reprimands and make written recommendations for other penalties. In the process of firing SVPD employees, Sailsbery gathered evidence about the alleged misconduct for the Chief.  She did not have authority to terminate subordinate officers, however—only the Chief could take such action.  Sailsbery was responsible for ensuring that SVPD employees were properly trained, although she delegated training to training sergeants who reported back to her.  She also double checked the payroll, comparing employees' time sheets to the schedule to ensure accuracy.

During her tenure from 2007 to 2009, Sailsbery was involved in the grievance process. After conferring with the Chief, she determined the outcome of grievances, although the Chief had to sign off on any monetary determinations.  During this period of time, she also coordinated activities with other law enforcement agencies.

During the points in time during Sailsbery's tenure as Deputy Chief that the SVPD also employed a Chief, her duties did not change when the Chief was on vacation or out sick.  During a period of time in 2009, however, while Sailsbery was Deputy Chief, the SVPD did not employ a Chief.  In addition, on March 26, 2015 Village Attorney Michael McGrath informed Sailsbery

by letter that Hanks directed that she "will be in charge" of the SVPD in light of the current Chief's upcoming retirement, although she would continue with her title as Deputy Chief. Doc. 162 ¶ 56. The letter further requested that she "provide updates as to any important police activities to Mayor Hanks and Village Administrator/Public Safety director Fairman." *Id.* On March 27, 2015, Hanks followed up with a memo to Village employees informing them that Sailsbery would be in charge of the SVPD upon the Chief's retirement.

Also in March 2015, the Village created the position of Director of Public Safety, and the Village then appointed Fairman both the Director of Public Safety and the Village Administrator. Although Hanks and the Village Board could have approved him to perform the command and functions of Chief of Police in light of the vacancy, they never did. Hanks sent another memo on April 17, 2015 to the SVPD informing them that Sailsbery would continue as Deputy Chief until further notice and the SVPD would operate without a Chief for the time being. The memo also noted that he had directed Sailsbery to report to him and Fairman.

After Fairman became the Director of Public Safety, Sailsbery "managed the day to day operations of the SVPD, completed payroll but tendered to Fairman rather than the Police Chief, attended Sauk Village Board meetings and provided reports to the Board, investigated wrongdoings of police officers, enforced the SVPD Rules and Regulations, and did anything assigned to her." *Id.* ¶ 28. After the Village appointed Fairman, Sailsbery testified that she could not tow a car without obtaining approval. She further testified that she had to run everything by Fairman. However, she continued to provide reports to the Village Board regarding SVPD operations and she was still responsible for investigating officers accused of wrongdoing and reporting them to the Board. Her job description did not change after the Village hired Fairman. However, Fairman stopped the SVPD's use of tasers and body cameras

on August 21, 2015, without Sailsbery's input. Fairman asked her to create general orders regarding tasers and body cameras, which she delegated to subordinate officers. Fairman also updated general orders without Sailsbery's input.

Hanks created a three-member committee in 2015 to review resumes and create a short list of Chief of Police candidates for him to review and interview. Postings in the SVPD announced that the Village was using a committee, made up of Fairman, Village Trustee Cecial Tates, and Village Trustee Rosie Williams, to pick a new Chief of Police. Hanks informed Tates that he was on the hiring committee and told him that the purpose of the committee was "to screen individual applicants." *Id.* ¶ 79. Based on his conversation with Hanks, Tates believed that the committee was choosing the next Chief—he learned later that this was not the case.

After the committee made its recommendations, Hanks then selected a candidate and recommended him to the Village Board to appoint. On August 25, 2015, the Village Board approved a contract to hire Robert Kowalski as Chief of Police. Then, on August 27, 2015, Sailsbery reverted back to sergeant from Deputy Chief. Hanks made the decision to demote Sailsbery from Deputy Chief so that Kowalski could choose whom he wanted to recommend as Deputy Chief.

## II.    Official Job Descriptions

### A.    Chief of Police and Deputy Chief of Police

Financial constraints forced the Village to abolish the position of Chief of Police in September 2012. In 2013, with the passage of Village Ordinance No. 13-020, the Village recreated the position. Village Ordinance No. 13-020 § 42-20(A) provides that the Village Mayor shall appoint the Chief of Police, "with the advice and consent of the corporate authorities." Doc. 162-18.

The Chief of Police has the authority to appoint the Deputy Chief of Police, pursuant to Village Ordinance No. 00-14 and 65 Ill. Comp. Stat. 5/10-2.1-4(2). Village Ordinance No. 00-14 also sets forth the duties of the Deputy Chief of Police:

    a.    General – The Deputy Chief has direct control over all subordinate members/employees of the Department. He shall have and exercise all of the functions, powers and duties delegated to him by the Chief of Police and which are necessary and proper to attain/retain an efficient/effective Department capable of protecting and serving the Village with the highest level of professionalism/integrity.

    b.    Specific duties of the Deputy chief of Police shall include:

    (i)    Enforcing the policies and procedures, rules and regulations, general and specific order [sic] for this government of the members and employees of the Department as well as the laws of the State and Village. Such enforcement may extend to subordinates outside the Deputy Chief's usual assigned sphere of administration if the law enforcement objective or reputation of the Department so requires or if no other provision is made for personnel temporarily unsupervised. This authority shall not be exercised unnecessarily. Should a deputy chief require a subordinate outside his sphere of administration to leave a regular assignment, the Deputy chief will inform the subordinate's own supervisor as soon as possible.

    (ii)    Investigating any/all complaints or charges brought against any member(s) of the Department a directed by the Chief of Police.

    (iii)    Relieving from duty any subordinate member(s) of the Department for cause.

    (iv)    Conferring with Subordinates for the Purpose of giving instructions so as to promote lawful conduct, uniformity, efficiency and effectiveness with the Department.

(v)     Keeping the Chief of Police informed of any event(s) which may impair/effect the image efficiency [sic], effectiveness of the Department, Village, or the individual employee.

(vi)     Attending all meetings as request/required by the chief of Police [sic].

(vii)     Keeping daily work records and personnel rating sheets and each other books/ records [sic] as the Chief of Police may direct.

(viii)     Delegate such of his powers and assigned such duties as he may deem necessary for the efficient/effective administration of that portion of the Department to which he is assigned by the Chief of Police.

(ix)     Periodically inspect all reports, personnel, facilities and equipment as to ensure that they are performing/being utilized to the highest degree of efficiency, effectiveness and in conformity with the laws of the State and Village as well as the rules and regulations, policies and procedures, general and specific order [sic] of the Department.

Doc. 162 ¶ 9. These duties have been incorporated into the SVPD Rules and Regulations. The Deputy Chief of Police job description in the SVPD Rules and Regulations remained the same from 2007 to 2015, which includes all time periods when Sailsbery was Deputy Chief.

The parties agree that the job description for the Deputy Chief does not include making SVPD policy and instead encompasses merely the enforcement of those policies. The Chief of Police, with the Mayor's approval and advice and consent from the corporate authorities, is the only person who can amend the SVPD Rules and Regulations.

The SVPD Rules and Regulations also state that the Chief of Police directs general management, administration, supervision, and control of the police. They provide that the Chief of Police is directly responsible to the Village Manager for the efficiency, effectiveness, and

general good conduct of the police department and its membership. If the Chief is temporarily absent or unavailable, the SVPD Rules and Regulations articulate the following chain of command: (1) Deputy Chief of Police, (2) sergeant assigned, or (3) senior officer on duty. The SVPD Rules and Regulations can only be amended with the approval of the Mayor and advice and consent of corporate authorities.

### B. Director of Public Safety

The Village created a position for Director of Public Safety on March 24, 2015, through Village Ordinance No. 15-008. According to the ordinance, the Director of Public Safety's responsibilities included: (1) overseeing the SVPD; (2) working with the Chief on the budget; (3) "[p]erforming advisory tasks and exercising administrative responsibilities" for the SVPD; (4) "[o]verseeing policy issues" for the SVPD; (5) "[o]verseeing, instructing and training members" of the SVPD; (6) informing the Village President and Board of Trustees of the SVPD's operations; (7) accessing SVPD records, files, and personnel files; (8) improving the SVPD's efficiency; (9) "seeking and obtaining grant funds;" (10) investigating complaints related to "matters under his jurisdiction" concerning the SVPD; and (11) performing "all command and administrative functions and duties" of the SVPD Chief upon a vacancy in the position and "approval of the President and Board of Trustees." *Id.* ¶ 61.

### III. Procedural History

All the parties other than FC moved to dismiss Sailsbery's claims. In its Opinion regarding the parties' motions to dismiss, the Court found that the Chief of Police position was a discretionary policymaking position, which precluded Sailsbery's equal protection claims against Hanks and Fairman to the extent they are based on Hanks and Fairman's failure to promote her to Chief of Police. However, the Court found that it was unable to decide at the motion to

dismiss stage that the Deputy Chief position was a policymaking position, and so it denied Hanks and Fairman's motions to dismiss Sailsbery's equal protection claims to the extent they were based on Hanks and Fairman's decision to demote Sailsbery from Deputy Chief to sergeant. Along the same lines, the Court could not determine at the motion to dismiss stage whether either of the positions were appointed positions, and so it denied the Village's motion to dismiss Sailsbery's Title VII claims. The Court also limited Sailsbery's claims against Hanks and Fairman to § 1983 claims, declined to dismiss her Title VII claims against the Village on other grounds, and declined to dismiss her *Monell* claim against the Village.

### LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**ANALYSIS**

I. **Sailsbery's Constitutional Claims**

A. **Equal Protection Claims (Counts V, VI, and VII)**

In light of the Court's decision on the motions to dismiss, Sailsbery's claims against Hanks and Fairman are limited to equal protection claims against them for demoting her from Deputy Chief to sergeant. Hanks and Fairman argue that, because Deputy Chief is an *Americanos* policymaking position, Sailsbery cannot maintain an equal protection claim against them. Sailsbery argues in response that the position is not a policymaking position.

A position is an *Americanos* policymaking position if it "authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Opp v. Office of State's Attorney of Cook Cty.*, 630 F.3d 616, 619 (7th Cir. 2010); *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996) (noting that the test is indistinguishable from the political patronage test used by the Supreme Court in *Branti v. Finkel*, 445 U.S. 507, 100 S. Ct. 1287, 63 L. Ed. 2d 574 (1980), and *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976), to determine if a government official is an employee who can be lawfully fired for political reasons). "Discretion is also important: when an employee exercises broad discretionary power, the state cannot easily fire the employee for insubordination even though 'the employee's performance frustrates the implementation of the administration's policies.'" *Embry v. City of Calumet City, Ill.*, 701 F.3d 231, 236 (7th Cir. 2012) (quoting *Selch v. Letts*, 5 F.3d 1040, 1044 (7th Cir. 1993)). The Court reviews "the 'powers inherent in a given office,' rather than the actual functions the occupant of that office performed." *Americanos*, 74 F.3d at 141 (citation omitted). The Court can determine these powers as a matter of law "without the aid of a finder of fact 'when the duties and

responsibilities of a particular position are clearly defined by law and regulations.'" *Opp*, 630 F.3d at 621 (citation omitted).

The Court thus turns to the powers inherent in the office of Deputy Chief. The parties agree that the SVPD Rules and Regulations and the relevant Village Ordinance give the Deputy Chief the authority to run the day to day operations of the SVPD. Doc. 162 ¶ 28. The Deputy Chief has "direct control" over all subordinate SVPD employees (which, based on the chain of command, is every SVPD employee other than the Chief). *Id.* ¶ 9. The Deputy Chief works with the Chief to ensure "an efficient/effective Department capable of protecting and serving the village of Sauk Village with the highest level of professionalism/integrity." *Id.* The Deputy Chief is charged with enforcing all policies, procedures, rules, regulations, and general and specific orders. She investigates complaints lodged against SVPD employees, as directed by the Chief. She has the authority to relieve subordinate employees from duty for cause. She also keeps the Chief informed of "any event(s) which may impair/effect the image efficiency, [sic] effectiveness of the department, Village, or the individual employee." *Id.* In addition, she attends Village meetings as necessary on the Chief's behalf. Moreover, in the absence of the Chief, the Deputy Chief commands the SVPD.

All of these duties and responsibilities provide the Deputy Chief with wide discretion to operate the SVPD. Through the day to day operation of the department, direct control over all SVPD employees other than the Chief, attendance of Village meetings, and her position as second in command (and possibly first in command) of the SVPD, she has direct and meaningful input into the way the SVPD operates. The Deputy Chief commands the SVPD in the absence of the Chief—based on the JSUMF, this is not an infrequent occurrence. During that time, the Deputy Chief directly reports to both the Mayor and the Director of Public Safety. Although her

power is not unchecked (and not perhaps as clearly policymaking as the Chief of Police, for example), the Deputy Chief has substantial discretionary authority in the implementation of the policy goals of the SVPD. *See Levin v. Madigan* (*Levin II*), No. 07 C 4765, 2011 WL 2708341, at \*11 (N.D. Ill. July 12, 2011) ("The fact that the plaintiff was not the ultimate decisionmaker does not discount the 'meaningful input into governmental decision-making' he had when advising 'his superiors concerning what his research [on issues and questions involving politics and policy making where there is room for principled disagreement] revealed, and what he thought would be the correct course of legal action." (quoting *Americanos*, 74 F.3d at 141–42)), *aff'd*, 692 F.3d 607 (7th Cir. 2012). Unlike in *Levin II*, some of the Deputy Chief's authority comes from her direct decisionmaking power over how to manage the day to day operations of the SVPD and how to enforce applicable laws, policies, regulations, and orders. But some of the discretion also comes from her ability to decide what issues to present to the Chief and the Village Board, how to conduct investigations for the Chief, and what recommendations to make to the Chief regarding employment decisions. On top of this, she also steps into the shoes of the Chief when the Chief is absent or unavailable—a position that this Court has already determined is policymaking.

Sailsbery argues in response that Village Ordinance No. 15-008, which created the Public Safety Director position, repealed much of Village Ordinance No. 00-14, which provides the job description for the Deputy Chief. Because No. 15-008 made the Public Safety Director responsible for overseeing the SVPD and its policy issues and overseeing, instructing, and training members of the SVPD, Sailsbery argues that it removed essentially all of the Deputy Chief's authority over the SVPD. The Court does not read Village Ordinance No. 15-008 in that manner. No. 15-008 did not change the chain of command in the SVPD, which still provides

that the Deputy Chief is second in command only to the Chief of Police. That is clear from the ordinance itself, which requires the approval of the "President and Board of Trustees" for the Public Safety Director to "take up and perform all command and administrative functions and duties of the Police Chief" if the Chief position is vacant. Doc. 162 ¶ 61. By implication, then, without such approval, the chain of command remains unchanged, and much of the power over the SVPD remains in the hands of the Chief and Deputy Chief of Police. Sailsbery argues that her authority changed greatly after the Village appointed Fairman as Public Safety Director, but the Court only considers the "inherent power" in an office and the official job description, rather than the duties a specific individual performed in that office. *Allen v. Martin*, 460 F.3d 939, 944 (7th Cir. 2006). The only exception to this is if Sailsbery demonstrates some type of "systemic unreliability" in the job description that merits looking past it. *Id.*

Sailsbery does argue this point—that the creation of the Public Safety Director caused "systematic unreliability" in the Deputy Chief job description, and so the Court should consider evidence outside of the Deputy Chief's official job description. The Court only considers additional facts "where the plaintiff demonstrates some systematic unreliability. *Id.* at 944. "To reach this point on summary judgment, however, [Sailsbery] must provide specific facts demonstrating that the description was unreliable and unauthoritative." *Id.* For example, if she could show that officials looking to expand their political power manipulated the description in their favor, then the Court would look past the official description. *Id.* Practically speaking, the Court considers how recently and how often the description has changed. *Id.* Here, as with the plaintiff in *Allen*, Sailsbery has not shown that the job description for Deputy Chief was unreliable. The description itself has not recently changed. Sailsbery argues that Fairman's appointment as Public Safety Director changed the Deputy Chief job description, but the Court

has already found that Village Ordinance No. 15-008 did not alter Village Ordinance No. 00-14. Although Fairman's appointment may have affected how Sailsbery performed her job, she does not put forth any evidence that shows that it affected the inherent power of the office of Deputy Chief or impacted the actual job description for the office. In light of this, Sailsbery has not demonstrated systemic unreliability and so the Court limits its analysis to the Deputy Chief's official job description.

Sailsbery further argues that the Court has already decided that the description in Village Ordinance No. 00-14 is not determinative as a matter of law that Deputy Chief is a policymaking position. In its decision regarding various Defendants' motions to dismiss, the Court decided that further discovery was necessary to allow both sides to further develop the duties and responsibilities of the Deputy Chief position. Now, at the summary judgment stage, with the benefit of both sides having had the opportunity to develop their case on this issue, and additional description provided by the SVPD Rules and Regulation and testimony from the parties, the Court finds itself in a much different position.

Sailsbery also argues that the official job description itself establishes that Deputy Chief is not a policymaking position, citing *Deneen v. City of Markham* to support her argument. No. 91 C 5399, 1993 WL 181885 (N.D. Ill. May 26, 1993). In *Deneen*, the court considered whether a deputy fire chief was a policymaking position. The court considered a local ordinance describing the structure of the fire department, as well as the job descriptions for the positions. However, *Deneen* is distinguishable from the present situation—although it does not specify the contents of the job description, ordinance, and testimony, it concluded that that evidence "indicate[d] the absence of any significant policy-making role." *Id.* at *4. Moreover, the decision was written before *Americanos* clarified the policymaking analysis for a position. In

addition, the only argument the defendant made in favor of the position being policymaking was that the ordinance allowed the deputy fire chief to serve as chief in the chief's absence, and it did not even provide any evidence that that ever actually occurred. *Id.* at *4–5. All of these distinctions render *Deneen* a faulty comparison to the present case, where the ordinance and job description indicate that Deputy Chief was in fact a policymaking position.

In addition, Sailsbery argues that, although the Deputy Chief takes command of the SVPD in the Chief's absence, that is not that same as assuming the Chief's duties, and the only way to provide the Deputy Chief with actual command of the SVPD would have been to swear her in as "Acting Chief." But this ignores the chain of command, which clearly provides that the Deputy Chief takes command of the SVPD in the absence of the Chief. With no one present to fill the shoes of the Chief, the SVPD must turn to the Deputy Chief to run the department. Sailsbery's distinction between "implementing" and "enforcing" policies is equally as unpersuasive; regardless of word choice, the Deputy Chief's role in ensuring that the SVPD carries out all laws, rules, policies regulations, and general and specific orders by nature contains discretion and room for input into the way that policies are carried out. As noted in *Allen*, "if the inability to set goals contrary to those of one's superior was the test for determining [whether a position was policymaking], no employee under the governor would be found exempt." 460 F.3d at 945. "Instead, we look to the ability to offer *input* into government decisionmaking." *Id.* Inherent in the duty of enforcing policy for an entire police department is the ability to offer input into government decisionmaking—after all, given the number of policies the Deputy Chief must enforce, some policies must be prioritized over others and some amount of interpretation is necessary for each one.

Ultimately, Hanks and Fairman have established that Deputy Chief of Police was a policymaking position, and so the Court grants summary judgment in their favor on Counts V and VI of the complaint.[2]  Moreover, the Court's decision that the Deputy Chief position is a policymaking one forecloses not only Sailsbery's claims against Hanks and Fairman, but also her claim against FC.  Because the arguments regarding the policymaking nature of Deputy Chief apply equally to FC as they do to Fairman and Hanks, and Sailsbery has had an adequate opportunity to respond, the Court enters judgment on Sailsbery's claim against FC as well (Count VII).  *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 2011) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion).  In light of this, the Court denies FC's motion for judgment on the pleadings as moot.

### B.  *Monell* Claim (Count VIII)

The Village argues that Sailsbery's *Monell* claim fails because her underlying constitutional claims fail.  Sailsbery defers to her response to Hanks and Fairman's motion.  To bring a proper claim under *Monell*, Sailsbery must allege an underlying constitutional violation.  *See Wilson v. Warren Cty., Ill.*, 830 F.3d 464, 470 (7th Cir. 2016) (finding that a plaintiff's *Monell* claims failed "because of the absence of an underlying constitutional violation); *Outley v. City of Chicago*, --- F. Supp. 3d ----, No. 13 C 1583, 2019 WL 172761, at *16 (N.D. Ill. Jan. 11, 2019) (finding that the municipality "cannot be liable under *Monell* since [the plaintiff] has not presented evidence from which a reasonable jury could conclude that he suffered a constitutional

---

[2] Hanks and Fairman also argue that even if Deputy Chief is not a policymaking position, it was objectively reasonable for them to believe that it was, and so they are entitled to qualified immunity. Because the Court finds that the position is policymaking, it does not reach this argument.

injury"). Because the Court has found that Sailsbery cannot bring claims for the underlying constitutional violations that she alleges, her *Monell* claim fails as well. The Court grants the Village's motion for summary judgment as to Count VIII.

## II. Title VII Claims

### A. Failure to Promote (Counts I and II)

The Village argues that, because Chief of Police is an appointed policymaking position, it is not covered by Title VII. Title VII excludes "appointees on the policymaking level" from its coverage. *Levin II*, 2011 WL 2708341 at *9. To determine whether an individual is an appointee on the policymaking level, the Court engages in a bifurcated analysis, considering whether the position is policymaking and whether the position was appointed.[3] *Id.* The Court has already concluded that Chief is a policymaking position, *see* Doc. 51 at 8–9, and so it turns to whether the position is an appointed one. *See Opp*, 630 F.3d at 621–22 (reviewing whether plaintiff was appointed by elected official); *Levin v. Madigan* (*Levin I*), No. 07 C 4765, 2008 WL 4287778, at *2–4 (N.D. Ill. Sept. 12, 2008) (finding Title VII required further analysis into whether position was appointed). Other courts have suggested that a position is appointed for purposes of Title VII only if an elected official or an elected office appoints the position. *See*

---

[3] The Seventh Circuit has not definitively stated whether "appointment" is actually necessary for the "appointee on the policymaking level" exemption to apply. *See Levin II*, 2011 WL 2708341 at *9 ("[T]he Seventh Circuit has not had occasion to define the exact parameters of what it means to be an 'appointee' for purposes of the Title VII and ADEA exemptions because in all of the cases before it, the law clearly stated that the plaintiff was appointed by a public official."). In *Opp*, however, the Seventh Circuit analyzed whether the position was an *Americanos* policymaking position and whether the position was appointed. *Opp*, 630 F.3d at 619–20, 621–22. Before *Opp*, many district courts only determined whether the plaintiff held a policymaking position, not whether the plaintiff was also appointed to the position by an elected official. *See Bervid v. Alvarez*, 647 F. Supp. 2d 1006, 1010–11 (N.D. Ill. 2009) (noting that the court did not need to speculate whether bifurcated analysis was necessary because plaintiff was in a policymaking position and appointed by an elected official). However, other district courts analyzed whether a policymaking position was appointed by an elected official, determining that the statutory language in the Title VII requires appointment as well. *See Levin I*, 2008 WL 4287778 at *2–4. The Court follows the bifurcated analysis in *Opp* and *Levin I* to determine if Title VII's exemption for appointees on the policymaking level applies.

*Opp*, 630 F.3d at 621–22 (addressing argument that position was not appointed by State's Attorney, an elected official); *Levin I*, 2008 WL 4287778 at *4–5 (finding at motion to dismiss stage that plaintiff assistant attorney general was not appointed by an elected official because he was appointed by chief of consumer protection agency with approval from deputy attorney general). Thus, the Court analyzes whether an elected official or office appoints the Chief.

Village Ordinance No. 13-020 provides that the Mayor appoints the Chief of Police. The analysis here is simple: the Mayor is an elected official, and so Chief of Police qualifies as an appointed position. *See Levin II*, 2011 WL 2708341, at *8 & n.5, *9–*11 (concluding at summary judgment that plaintiff's position was an appointed position exempt from Title VII coverage). Sailsbery does not dispute the ordinance, but she argues that when Hanks used a committee to screen applicants for the position, he effectively relinquished his authority to appoint the Chief. Sailsbery does not cite any authority to support her arguments here and does not explain why the Mayor should not be able to consult with whomever he would like in the process of selecting a candidate for Chief of Police. Sailsbery's argument is not persuasive here, where the law is clear that the authority to appoint the Chief of Police remains with the Mayor. *See Opp*, 630 F.3d at 622 (finding plaintiff's arguments that the State's Attorney's Office, rather than the State's Attorney, appointed him unpersuasive where Illinois law clearly mandated that the State's Attorney appointed him). Because the Court has already found that the Chief of Police is a policymaking position and it now finds that the position is appointed by an elected official, Sailsbery cannot bring a claim regarding the Chief of Police position under Title VII, and so the Court grants the Village's motion with regard to Counts I and II of the complaint.

### B.      Demotion (Count III)

Along the same lines, the Village also argues that Deputy Chief of Police is an appointed policymaking position, precluding any Title VII claims regarding Sailsbery's demotion from that position. Again, the only issue left for the Court to resolve here is whether the position is an appointed one. The applicable caselaw is the same as that cited in the previous section of this Opinion, and the disposition is equally as clear. Village Ordinance No. 00-14 provides that the Chief of Police appoints the Deputy Chief of Police. As discussed above, the Chief of Police is not an elected official (the Mayor appoints that position), and so the Village has not established that the position is exempt from Title VII. *See Opp*, 630 F.3d at 621–22 (addressing argument that position was not appointed by State's Attorney, an elected official). The Village makes no argument on this matter in its initial motion, instead deferring to Hanks and Fairman's motion, which does not argue that an elected official appoints the Deputy Chief. In its reply, the Village argues that the Mayor and the Village's corporate authorities could decline to fill the Chief of Police position, which would effectively appoint the Deputy Chief as the Chief of Police. This attempt to muddy the waters is no more effective than Sailsbery's attempt with the Chief of Police position above. The Village's argument only underscores that the Chief of Police is a position appointed by elected officials, but it does not change the fact that the authority to appoint the Deputy Chief of Police resides with the Chief of Police alone, who is not an elected official. The Court denies the Village's motion with regard to Count III.

### C.      Hostile Work Environment (Count IV)

The Village argues that because Sailsbery's retaliation and hostile work environment claims center on positions that are exempt from Title VII (the Chief and Deputy Chief positions), the Court should not allow those claims to move forward either. In this argument, the Village

frames the retaliation and hostile work environment claims as solely based on their attempts to prevent her from becoming the Chief of Police. Sailsbery responds that consideration of these claims on summary judgment is inappropriate at this time given the limited scope of the discovery that the parties have engaged in thus far and asks the Court to strike them from the record. Sailsbery further argues that the allegations in her complaint remain unrebutted.

The Court construes the Village's arguments as questioning the appropriateness of these claims in light of the Village's arguments that the Chief and Deputy Chief positions are exempt from Title VII's coverage. It does not interpret the Village's argument here to be questioning Sailsbery's ability to prove the substantive elements of the claims at trial, which would veer into unfair territory given that the Court has limited discovery thus far to issues of policymaking and appointment. Subject to that limitation, the Court declines to strike this portion of the Village's argument. However, review of the allegations in the retaliation and hostile work environment counts of the complaint reveals that the Village's characterization is incorrect. The allegations do not mention the Village's (and other parties') decision not to promote Sailsbery to Chief of Police. Rather, Sailsbery's retaliation claim for demotion from Deputy Chief alleges that the Village demoted her because of the complaints she made to the EEOC, the Mayor, and Village trustees, as well as federal lawsuits that she filed, regarding discrimination, harassment, and retaliation she experienced based on her race and gender. Doc. 1 ¶¶ 12–20, 89–92. Many of these complaints and lawsuits centered on the Deputy Chief position, which the Court has found is not excluded from Title VII coverage. Similarly, Sailsbery's hostile work environment claim centers on the Village's "retaliation and harassment," which she alleges was "sufficiently severe and persuasive to alter the terms and conditions of her employment and create a hostile working environment." *Id.* ¶ 96. The Court has already decided that these claims should survive the

motion to dismiss stage, *see* Doc. 51 at 11–12, and the Village has not provided a new reason why the Court should enter judgment on these claims. Thus, the Court denies the Village's motion with regard to Count IV.

## CONCLUSION

For the foregoing reasons, the Court grants Hanks and Fairman's motion for summary judgment [160] and grants in part and denies in part the Village's motion for summary judgment [164]. The Court denies FC's motion for judgment on the pleadings [155] as moot. The Court enters judgment in favor of Hanks, Fairman, and FC.

Dated: March 4, 2019

SARA L. ELLIS
United States District Judge